FOUTELET ET AL *vs.* MURRELL.

ON AN APPLICATION FOR A RE-HEARING.

Informalities and relative nullities, in the settlement of successions and disposition of property inherited by minors, must be taken advantage of by the minors themselves. As respects third persons, such transactions are valid until set aside.

Where minor heirs claim a restitution *in integrum,* they are bound to place matters as they were before. If they claim the property in nature or in kind, they must refund the amount received by them on account of it.

The mortgage acquired by a third person on dotal and paraphernal property of the deceased wife, after it is adjudicated by the Probate Court to the surviving husband, will be binding and conclusive against her heirs, if executed before any act is done by them to annul the adjudication.

*Conrad,* for the plaintiffs, presented the following petition and argument for a re-hearing :

" The counsel for the plaintiffs, under the firm conviction that the opinion of the court is erroneous, is impelled to solicit a re-hearing in this case. Had the court referred to the arguments and authorities adduced by him, if it were only to repel them, or to deny their applicability, neither self-love, nor a sense of duty to his client, would have been sufficiently strong to have prompted him to undertake so hopeless a task as that of obtaining a re-hearing. But when the court has not condescended to notice, in the slightest manner, the arguments adduced by him, and the authorities quoted in their support, he cannot but believe that, owing to the intricacy of the record, the circumstance of the case having been argued by brief, and the long absence of the judge on whom the examination of the record devolved, some oversight has been committed, and the opinion of the court too hastily formed.

" The counsel for the plaintiffs relied, principally, on these principles, all of which rest on textual provisions of our laws, or are sustained by authorities that have never been controverted.

"1st. That every act of confirmation or ratification necessarily supposes something to confirm or ratify, some contract void or voidable, from want of power or capacity in the parties, or one of them, from some defect of form, or from some other cause. It is to cases of this nature that this court, has in several instances applied the principle, that a voluntary execution of the contract, at a time when the party could legally ratify it, was tantamount to an express ratification of it, as in the case of a sale made by a minor ; or a *contract made* in error, but ratified or *voluntarily executed* after the error is discovered. But when an individual causes himself, by his own unauthorised act, to be put in possession of the property of another, alleging himself to be the proprietor of one half of it, and that the other half has been sold to him, not by the minor himself, but by a court of. justice which had no earthly power to act in the matter, does a receipt by the real owner of the price of the half thus sold, convey a title to the purchaser, not only to that half thus pretended to be sold, but of the other half, for which there is not even a pretext or a shadow of title ? A person gets property to be adjudicated to him, as part of the community, which is found to be no part of it ; a more complete nullity cannot be imagined. His children, who were all minors when this occurred, grow up, and find him in possession of the property under this title ; they suppose all to be correct ; receive their half of the price of this pretended sale ; and it is contended that this receipt, manifestly the result of error in both parties, or of fraud in one and error in the other, is tantamount to a conveyance, not only of the half of which it was the price, but of the other half, which the pretended purchaser retained in his own right, though in fact he had a right to no part of it. Now the utmost extent to which this court has ever carried the doctrine of *implied ratification*, is that the receipt of the price

of a thing is equivalent to a sale of that thing.. They never have pretended that the receipt of the price of *one undivided half* of a thing was equivalent to *a sale of the whole,* for that would be giving to the receipt not only the same effect as a sale, but greater, as by no rule of interpretation could a sale of the half be understood as a sale of the whole. When, in addition to this, it is recollected that there was no sale, either of the whole or of any part, (as the adjudication, it is admitted, was a mere nullity) and that the receipts, such as they were, were given in manifest error, induced by the acts of the person to whom they were given, we cannot conceive that, as between the parties themselves, the court would give them any other effect than as the mere evidences of money paid, which the person who paid it might be entitled to recover back. Now, as regards the rights of third persons, I have always thought that they acquired no other right than their vendor or mortgagor had to the property sold or mortgaged; that is, than the *titles* of the latter gave him on their face. A party may sometimes transfer to a third person a greater right than he himself had, but certainly no greater right than *his titles apparently gave him*; that is, in other words, where a title in the vendor is apparently good, in some cases the purchaser might not be affected by *extrinsic* circumstances of error, fraud, &c., which might affect the title to the property in the hands of the vendor, though even in that case this court has determined (and that too in relation to moveables) that when possession is obtained by fraud, third persons can acquire no greater rights than the possessor himself had. *Gasquet et al* vs. *Johnson,* 2 *Louisiana Reports,* 514. But it has never been contended, that if a person had himself no title to property, he could transfer a title to any one else. If a man causes my property to be adjudicated to him, without my consent, and in a case where no law authorises such a proceeding, he certainly has no title, and can convey none. If I afterwards, with a full knowledge of all these facts, confirm or ratify his title in proper form, he acquires a title, and can transfer it to a third person; but if the act of ratification

is void as to him, that is, if on its face it is defective or insufficient, a third person, whether a purchaser or mortgagee, acquires no other or greater rights than the possessor himself. " *Nemo ad alium plus juris transferre potest quàm ipse habet.*" *Louisiana Code, arts.* 2427, 3268.

" 2d. We contended that all these receipts were null, as they were not accompanied by the formalities required in settlements between a tutor and his pupil. On this point the authorities are so clear that no argument can make them clearer. I shall only observe, that it is not the settlement of his accounts as tutor alone which is declared to be null, unless accompanied by the formalities required by law, but every agreement. " *Toute Traité qui pourra intervenir.*" *Art.* 355. In fact the adjudication to the father in this case was a necessary voucher, " *price justificative,*" as it formed the basis of the whole settlement between the tutor and his pupil."

*Bullard, J.,* delivered the opinion of the court.

A petition for a re-hearing has been presented in this case, in which the counsel for the appellant is pleased to remark, that " he cannot but believe, that owing to the intricacy of the record, the circumstance of the case having been argued by brief, and the long absence of the judge on whom the examination of the record devolved, some oversight has been committed, and the opinion of the court too hastily formed." In this statement there are two errors, which we feel bound to notice. The judge alluded to was absent, by permission of the court, four judicial days. Whether that be a *long* absence, is a matter of opinion upon which persons might very honestly differ. The legislature, by statute, authorises the judges to be absent themselves occasionally, during ten days, and the statute does not require the previous permission of the bar. The other error is in supposing that the examination of the record in this case devolved, exclusively, on the same member of the court. This intimation is wholly gratuitous. The record was repeatedly examined and read over by us all together, and considered with the

EASTERN DIST.
*April,* 1836.

FOUTELET ET AL.
*vs.*
MURRELL.

most scrupulous anxiety to ascertain the truth. As to matters of fact, it is not pretended that we committed any mistake.

The case, in our opinion, turned upon the effect of certain acts of the plaintiffs, which, it was contended by the defendant, amounted to a ratification of the proceedings had in relation to the property left by their mother. The plaintiffs insist that these acts do not amount to a ratification, and are in themselves radically null : 1st, because there was nothing susceptible of ratification to which they referred ; and 2ndly, that they are null, because they amount to an agreement, or *Traité,* between the minors, after they had attained the age of majority, and their tutor, not preceded by a rendition of accounts according to article 355 of the Louisiana Code.

I. The proceedings in 1817, in relation to the estate, were that an inventory was taken, in which all the property in possession of Foutelet, the father, at the death of his wife, was regarded as belonging to the community. The Court of Probates, on the advice of a family meeting, and with the concurrence of the under tutors of the plaintiffs, adjudicated the whole property to the tutor, at the price of estimation ; at the same time, there is what purports to be a liquidation of the community. The land, with the improvements, was estimated at three thousand dollars. In the liquidation, the heirs of the wife are credited with the sum brought into marriage, as per contract ; with " *the amount of the land,*" four hundred dollars ; and with her portion of her father's estate, one thousand nine hundred and eighty-three dollars, and with one half the profits of the community. This gave to the heirs, after deducting the debts from the common mass, the sum of four thousand seven hundred and forty-two dollars, making six hundred and seventy-seven dollars and three-sevenths for each heir ; and the husband credits himself with three hundred dollars brought by him into marriage, and one half the profits, one thousand nine hundred and thirteen dollars, amounting to two thousand two hundred and thirteen dollars. It is to be presumed, that the four hundred dollars represents the value of the land,

independent of the improvements, and that the improvements belonged to the community, to wit: two thousand six hundred dollars.

This appears to us a judicial proceeding, in which 'the plaintiffs were represented by their under tutor, and, although, perhaps, clearly erroneous, certainly not so null, *ipso jure,* as not to be susceptible of ratification. If, on arriving at the age of majority, the children found it most advantageous to adhere to that arrangement and liquidation, and to receive the six hundred and seventy-seven dollars, with interest at five per cent. from 1817, they had a right to do so. One of them, Paul or Hypolite, has done so in the most explicit terms. In the act signed by him in 1832, he says expressly, that he approves the account or liquidation of the 10th February, 1817, and the adjudication of the property to his father, and claims only the six hundred and seventy-seven dollars, with interest.

But it is urged, that although a minor who, having arrived at the age of majority, receives the price of property alienated irregularly by his tutor, is considered as having tacitly ratified the alienation, yet this court has never before decided that when he receives the price of only one half, he is considered as having ratified the sale of the whole.

If the counsel had examined the record with more attention, he would have discovered that he had fallen into a manifest error in this particular. In the liquidation of 1817, the father credits himself with no part of the land or slaves belonging exclusively to his deceased wife. Her heirs are credited with the whole property inherited by her from her father, estimated in money, and that, instead of keeping one half of the value of the property in the inventory, he retains less than a third. That there was error in the original settlement and adjudication we readily admit; but we do not see in what consists the error in the ratification by Paul Foutelet, referring, as he does, expressly to the first proceedings, and approving the adjudication and the account rendered by his father.

II. It is further contended, that the discharge of the father, by these acts on the part of the plaintiffs, without any previous rendition of account by the tutor, is null, according to article 355 of the *Louisiana Code*. As an agreement by which the tutor is released from rendering any further account of his tutorship, it was perhaps null in the terms of that article; but what kind of nullity, whether *ipso jure* or only relative, is quite a different question. If absolutely and radically null, then it is null as relates to the tutor, as well as to the minor. But we do not consider this as belonging to that class of nullities. The father could not treat it as absolutely void; and, as respects third persons, it ought to be considered as valid until set aside. Such nullity was enacted for the benefit of the minor, and he is at liberty to avail himself of it, or not. If he claims a restitution *in integrum*, he is bound to place matters as they were before. How can the plaintiffs retain what they have received, and yet claim the property of their mother in nature? 3 *Duranton, No.* 639. *Merlin Repertoire, verbo Tutelle, section 5.*

But the next article of the Civil Code (356) declares that the action of the minor against his tutor, respecting the acts of tutorship, is prescribed by four years, to begin from the day of his majority. Whether such prescription would apply to the receipts in question, we are not called on to decide, but the opinions of Duranton and Merlin incline that way. But, at any rate, we consider them binding in relation to third persons, until declared null in some proceeding between the parties. Being acts of persons capable of contracting, they must stand until avoided or rescinded.

While this judicial proceeding, relating to the estate of Catharine Doublin, stood unreversed, without any knowledge of latent errors, Murrell, the appellee, acquired his right. The mortgage to him was soon after followed by the discharge, signed by two of the heirs, and recorded in the office of the parish judge, and by the positive and explicit ratification of the other heir, Paul. These acts had not been rescinded as erroneous, when the judgment was rendered in favor of Murrell. They were executed with a presumed notice of

EASTERN DIST.
*April*, 1836.

FOUTELET ET AL.
vs.
MURRELL.

Informalities and relative nullities in the settlement of successions, and disposition of property inherited by minors, must be taken advantage of by the minors themselves. As respects third persons, such transactions are valid until set aside.

Where minor heirs claim a restitution *in integrum*, they are bound to place matters as they were before. If they claim the property in nature or in kind, they must refund the amount received by them on account of it.

The mortgage acquired by a third person on dotal or paraphernal property of the deceased wife, after it is adjudicated by the Probate Court to the surviving husband, will be binding, and conclusive against her heirs, if executed before any act is done by them to annul the adjudication.

39

EASTERN DIST.
*April*, 1836.

Murrell's right already acquired, inasmuch as his mortgage was matter of public record; and it would, in our opinion, be iniquitous to treat his mortgage as a nullity, upon the grounds assumed by the appellants.

The re-hearing, for these reasons, is refused.