### ·KEMP, Tutrix, v. ROWLY et al.

Where a tutor acknowledges, in an authentic act, the receipt of the amount of notes due to his minor, which were secured by mortgage, and releases the mortgage, the acknowledgment is evidence, so far as third persons are concerned, of the extinguishment of the debt, and, as to them, the release of the mortgage will be valid, though the amount of the notes was never paid, or paid only in part, to the tutor. But parties or privies to the pacts in which the release originated, cannot take advantage of their own wrong, to the injury of the minors.

Where a tutor releases a mortgage held by minors on a plantation and slaves, in a case where the annual interest of the debt was more than sufficient for their wants, and there were no debts to pay, the release being made fraudulently to enable the debtor to effect a loan on the property, and the tutor receives in payment of the minors' claims depreciated bank notes, the debtor will not be allowed, in the absence of proof that the notes or their proceeds actually enured to the benefit of the minors, credit even for the actual value of the notes paid to the tutor. The release of the mortgage is a fraud on the rights of the minors, which none of the parties or privies thereto will be permitted to take advantage of.

Knowledge by an agent of the fraudulent character of a transaction, acquired in the course of his employment, is binding upon his principal.

In an action by a tutor to annul the release of a mortgage in favor of his minors, made in fraud of their rights by a former tutor, the latter is a competent witness for the plaintiff, to prove that no money was received by him in discharge of the debt due to the minors, although its receipt has been acknowledged by him in an authentic act. *Per Curiam:* The necessity of the case which admits agents as witnesses for their principals, is equally applicable to tutors, when called to establish facts, the knowledge of which rests with them alone.

Actions on behalf of minors for restitution against acts committed in fraud of their rights, are not prescribed by five years.

APPEAL from the District Court of Concordia, *Curry*, J.   *Thomas* and *O. N. Ogden*, for plaintiff.   *Frost, T. P., & F. H. Farrar, H. A. Bullard, Stacy* and *Sparrow*, for the appelants.

The judgment of the court was pronounced by

EUSTIS, C. J.   This is an action instituted by the tutrix of the two minor children of the late *James Kemp*, for the restitution of certain hypothecary rights, which had been released by their former tutor, *Thomas B. Kemp*. *James Kemp*, who resided in the State of Kentucky, was, with his two sisters, Mrs. *Rowly* and Mrs. *Sprague*, the joint owners of the Marengo plantation, situated in the parish of Concordia, and slaves.   To effect a partition, the plantation and slaves, after the death of *James Kemp*, were sold at probate sale, the price payable two-thirds in cash, and one-third, the portion belonging to the minors, in five equal annual instalments, bearing ten per cent interest from date, with special mortgage on the property sold.   *Rowly*, the defendant, husband of one of the proprietors, was the purchaser for $112,500, and gave his five notes for $7500 each, with special mortgage in favor of the tutor, *Thomas B. Kemp*, according to the conditions of the sale.   The date of the notes is the 15th of June, 1835. · There was an additional personal security, on the three first notes, but they were all payable to the order of the tutor.

It is alleged that, on the 8th October, 1838, the tutor fraudulently, illegally, and without having received payment of the amount, delivered up to *Rowly*, the purchaser of the plantation and slaves, and the debtor, four of said notes ,and released and cancelled the mortgage given to secure them; that afterwards the tutor resigned his trust, and the plaintiff was appointed tutrix of the minors; that, with the exception of the first note, which was duly paid to the former tutor, and several smaller sums which will be admitted, the amount of the four last notes and interest is still due by the said *Rowly*, for which they still of right have the first mortgage on said plantation and slaves.   It is charged in the petition, that the release of the mortgage and the cancelling of the notes was effected, at the instance of the debtor and tutor, for the purpose of defrauding the minors, without any payment in lawful money, or its equivalent, being made; and that, on the day of the release, the 8th October, 1838, *Rowly* and his wife mortgaged to *Daniel W. Coxe*, residing in Philadelphia, the whole of the Marengo plantation and slaves, for the consideration stated in the act; that the release of the minors' mortgage was to give greater security to said *Coxe* for the loan made by him to *Rowly*, the illegality of which *Coxe* was aware of, the said *Coxe* well knowing that the release of the mortgage was made for the purpose of enabling *Rowly* to borrow from him depreciated bank notes and sinking bank stocks, for which said mortgage to *Coxe* was given.   The intendment of the petition is to effect the mortgage of *Coxe*, by notice of the alleged fraud in the release of the mortgage of the minors by the tutor.   The object of the suit is to reinstate the minors in their rights of mortgage adversely to *Coxe*, and he is accordingly made a party, together with *Rowly* and *Lansing*, a third purchaser of the Marengo plantation and slaves, who, so far as this litigation relates, has no interest, being bound to pay only the amount of his bid at sheriff's sale, which will not be affected by any change in the order of mortgages, and no decree being asked against him.   There are creditors of the hypothecated property by judicial mortgages, originating after the release of the minors' mortgage, who have also been made parties (the rights of these will be noticed in their proper place), and who are affected by the decree to be rendered.   Mrs. *Rowly* is also

a party, by reason of a tacit mortgage which exists in her favor on the property of her husband. There was a judgment in favor of the plaintiffs, against the principal debtor, *Rowly*, for $30,000, with interest according to the tenor of the notes, subject to a credit of $1000, to take effect from the 11th March, 1841; and the rights of the minors, as mortgage creditors, with the vendor's privilege on the plantation, slaves, etc., are restored and reintegrated, to take effect against all parties from the date of the original adjudication, made by the Court of Probates of Concordia, on the 15th June, 1835. The defendants have all appealed.

The points of attack and defence have been various. Those which the court consider material and requiring any notice, will be considered as they have been presented in argument.

I.   The power of the tutor to grant the discharge of the debtor, and to release the mortgage, except on payment, is denied; and it has been urged that, in the view of the law, the mortgage must be held as still existing in favor of the minors. The tutor is authorized to receive payment, and, whatever may be the relations between him and the debtor, resulting from their private agreements, the receipt and discharge of the debt, by reason of payment given by the debtor, in an authentic act, so far as third persons are concerned, are evidence of the extinguishment of the debt, and the release of the mortgage consequent thereto is valid to all intents and purposes. By our Code, art. 327, the tutor has care of the person of the minor, and represents him in all civil acts. He is bound to administer the estate of his ward as a prudent administrator, and is responsible for damages resulting from a bad administration. These provisions are identical with the two first principles of art. 450 of the Napoléon Code, and Merlin thus gives his opinion on the power of tutors to raise mortgages, given as securities for debts due to minors. After stating, in general terms, that the tutor, on receiving payment, may release a mortgage without recurring to the authority of justice or of a family meeting, inasmuch as no form is required to attend a payment, which he has the power and it is his bounden duty to receive, he adds: "Il le pourrait encore, lors même qu'il ne recevrait pas le montant de la dette, et qu'ainsi l'affranchissement de l'hypothéque accordé par lui, représenterait une espèce de remise, sinon de la dette, du moins des suretés, qui la guarantissaient. Qui peut le plus, peut le moins. Le tuteur peut recevoir les sommes mobilières dues au mineur et les dissiper. La liberation n'en est pas moins acquise au débiteur, la responsibilité du tuteur reste seul engagée. Art. 450 du Code Napoléon. Si la radiation ou la remise de l'hypothéque vient à compromettre le recouvrement de la dette, il en demeurera pareillement responsable, mais la radiation de l'hypothéque n'on opérera pas moins son effet." The tutor having the right to raise the mortgage, it must yield to the rights of subsequent mortgagees. The reason of Judge Simon, in the case of *Delavigne, Syndic.* v. *Gaiennié*, 11th Rob. 171, has a direct application to the facts of this case, and were a contrary doctrine established, the purposes of the laws concerning the recording of mortgages would be completely frustrated.

II.   It becomes necessary to examine the validity of the release, so far as relates to the parties to the act, and those who, by reason of their privity to it, are affected by notice, and stand in no better situation as to their hypothecary rights, than the parties themselves. The capital of the first note, due in June, 1836, was paid, and when the release was given, the last note was not due. The

debt of the minors was well secured, and bore interest at ten per cent. The plantation was in cultivation, and the adequacy of the security has not been questioned. If the interests of the minors were to be consulted, what reason can be offered for changing an investment lawfully made, and so well calculated to subserve their wants and conveniences. No debts required the raising of money, and the conversion of this security, particularly at the time it was made, during the suspension of specie payments by the banks of this State, must have originated from some other views than those which a prudent administrator would have taken, in relation to the interests of those whose persons and property were confided to his charge. The minors did not want the money; the interest alone was more than sufficient for their support; and no reason has been given, approaching to a justification of this act, on behalf of the tutor; and when we look at the facts connected with it, we can find nothing in them which can exonerate him from the responsibility which the law attaches to his administration. The release was granted by the tutor, to enable *Rowly*, the debtor, to effect a loan from *Coxe*. The pretended equivalent received by the tutor was $15,000, in *Rail Road* money, and $10,000 in Agricultural Bank stock. The notes and the stock were of banks in Mississippi, which had suspended specie payments. The stock was transferred directly from *Coxe* to the tutor, and the notes were delivered after the release and mortgage to *Coxe* were completed, the mortgage bearing the same date and being executed before the same officer, the parish judge of Concordia. The mortgage was given by *Rowly* and wife, who gave joint and several notes for the amount.

In relation to the stock, the counsel for *Rowly* do not claim to take advantage of it as a payment, even for its value, but urge that the debt of the minors ought to be credited with that of the Rail Road bank notes, which they allege were worth at the time of the transaction ninety per cent, making $13,500. Conceding that the $15,000 of bank notes were really worth that sum, it is not easy to find a sound reason for which the minors should be charged with it. That the tutor was justified, under the circumstances, in receiving for this well secured debt, the sole patrimony of his wards, the depreciated bank notes of another State, is a proposition repugnant to the first and elementary principles of the law of mandate. *Mr. Rowly* well knew the law, and that, between the tutor and the minors, the receipt of the bank notes by the former had no binding force in law as to the rights of the minors, and that they could only be bound by the *soi disant* payment, on its being established that its value enured to their benefit. Nor has the allowance of this credit any foundation in the equity which this case presents. When *Rowly* was sued on this loan by *Coxe*, he urged in defence that this very bank stock, when received, was worth but $50 per share, and that the bank notes were not worth more than 60 per cent, and obtained a diminution of the amount due on account of the depreciation of these very notes. 12 Robinson's Reports, 278. The attempt to pay the minors at par, with notes at a discount of ten per cent., and with stock of a bank which had ceased to pay its obligations, can receive no countenance from a court of justice. The law considers the release of the mortgage by the tutor, under such circumstances, as a fraud on the rights of the minors, and we cannot permit any of the parties to take advantage of it. The agent of *Coxe* was a party to the act of the mortgage, executed before the same officer and at the same time with the release, and knowledge in him of the whole transaction is proved beyond question, which binds his principal. *Mrs. Rowly* also stands affected

KEMP
v.
ROWLY.

with notice. As to the law concerning notice to agents as binding principals, *vide* Sugden on Vendors, chap. 17, p. 534 *et seq.* Story on Agency, § 451.

III. A bill of exceptions was taken to the admission of the former tutor, who was offered as a witness by the plaintiff, to prove the non payment of money in discharge of the minors' debt, and the fact of the receipt of notes and stock by him, as charged in the petition.* We think he was a competent witness, and that the court did not err in receiving his testimony. The necessity of the case which admits agents as witnesses for their principals, is equally applicable to tutors, when called to establish facts, the knowledge of which rests with them alone. It is contended by the counsel for *Rowly*, that the note due in 1837 is prescribed by lapse of time, and that the minors cannot recover the amount. We think that this action, which is for the restitution of minors against acts committed in fraud of their rights, is not prescribed by the term fixed for the prescription of promissory notes.

It has been contended that the mortgage rights of the minors have been lost, in consequence of the non-inscription of the mortgage within ten years from its date. The mortgage, as we have seen, was dated on the 15th of June, 1835, and was duly recorded, and it was not reinscribed until the 19th of June, 1845, some days after the judgment was rendered in the court below. More than ten years had elapsed since the date of the mortgage; but the grounds on which we base this decision takes the case out of the rules relating to the *per- emption* of mortgages after the lapse of ten years. We have said that the mortgage was in fact released, but hold that the parties and privies to the pacts in which that release originated, cannot take advantage of what we conceive to have been their own wrong, to the detriment of the minors.

The recorder of mortgages was not bound to reinscribe the mortgage after its release by the tutor, and it may be considered as not within the power of the minors to have a reinscription effected until reintegrated in their rights by the decree of a court. We do not think the rules established in the case of *Shep- herd* v. *The Orleans Cotton Press*, ante p. 100, concerning the *peremption* of mortgages by reason of the non-renewal of their inscription, applicable to this case.

Having come to the conclusion that the release of the mortgage by the tutor was valid, third persons cannot be prejudiced by the causes which rest exclusively with those who were parties and privies to the transaction, and which we are bound to declare, so far as the minors are concerned, as of no effect and void.

IV. We give precedence to the hypothecary rights of the minors over the *Coxe* mortgage, which takes rank before the judicial mortgage of the Mechanics' and Traders' Bank, and that of the Union Bank of Mississippi. The former was based on a conventional mortgage, given by *Rowly* and wife to the bank subsequently to the release, and therefore we hold it to have effect adversely to the mortgage of the minors. The mortgage of the Union Bank also takes precedence of it, and the effect of our decree will be to give the minors the benefit of the *Coxe* mortgage, to which the minors stand of right substituted to the amount of their debt, to the extent of one-third interest in the plantation

---

* The testimony of this witness was excepted to on the grounds: 1, that he was inter‾ ested in having the mortgage reinstated, which would release him from liability to the mi‾ nors; 2, that he could not be heard to establish the illegality of his acts and his own turpitude; 3, that his parol evidence could not be received against his own written acts

and slaves, as mentioned in the original act of mortgage in favor of the tutors. The effect of the several mortgages on the other two-thirds of the plantation and slaves, will not be touched by this decree. The rights of the minors will also take precedence of the tacit mortgage of *Mrs. Rowly*.

KEMP
*v.*
ROWLY.

We allow two credits, not allowed in the judgment of the District Court, one of $300, the other of $1000, to date from the 1st August, 1842..

It is therefore ordered that the plaintiff recover from the defendant, *Charles N. Rowly*, the sum of $27,700 00 principal, and ten per cent interest from this day on said amount, until paid; and the further sum of $34,047 43⅔, being arrears of interest, and costs of court, with right of mortgage and vendor's privilege on the individual third part of the Marengo plantation, lands, slaves, &c.; bought by said *Rowly* at a probate sale thereof, on the 15th June, 1835, and mortgaged by him to *Thomas B. Kemp*, as tutor of the minors, *James* and *David B. Kemp*, by authentic act, passed on the 17th June, 1835, as mentioned and described in the plaintiff's petition and said authentic act. And it is further decreed, that the said mortgage and privilege established by this decree, take precedence of the mortgage in favor of *Daniel W. Coxe*, and of the tacit mortgage of *Mrs. Jane Rowly*, so far as relates to the said one-third interest in said plantation and slaves; and to that effect the said mortgage in favor of said *Thomas B. Kemp*, tutor, is revived and reintegrated adversely to the said hypothecary rights of the said *D. W. Coxe* and *Jane Rowly*, and substituted in the place and stead thereof; and, for the amount of said mortgage in favor of said *Coxe*, the said mortgage in favor of said *Thomas B. Kemp*, tutor, is declared to take precedence of the mortgage and judgment of the Mechanics' and Traders' Bank and of the Union Bank of Mississippi, and for no more. And it is further ordered that the said one-third interest in said Marengo plantation and slaves be seized and sold to satisfy the plaintiff's debt, interest, and costs; that there be judgment against said *Lansing*; and that the costs of this appeal be paid jointly by the plaintiff, *D. W. Coxe*, and the said defendants, *Rowly* and *Lansing*.*

---

* *H. A. Bullard* and *Frost* prayed for a re-hearing, on the ground that, though the opinion of the court declares that the release of the mortgage by the first tutor was valid, as to third persons without notice, and that, especially as to the Mechanics' and Traders' Bank, effect ought to be given to their mortgage adversely to that of the minors on one-third of the Marengo estate, yet the decree gives the mortgage of the minors full effect as to that bank.