No. 3177.—LUCIEN BLAND et als. *v.* EDWARD LLOYD et als.

|  |  |
|---|---|
| 24 | 603 |
| 51 | 645 |
| 24 | 603 |
| 119 | 786 |

A tutor has the right to purchase at the sale of the minors' property which he is administering, if he be the surviving partner in community, or an heir or a legatee of the deceased.

In a suit by the heirs to recover the property of their ancestor, which has been sold by the tutor, on the allegation that the sale made by the tutor through the agency of a third person is a nullity, parol evidence is admissible to show that the estate was in debt, and that the purchase money went to discharge the debts of the estate, and that the balance was divided among the heirs of age.

Where property of an estate which is largely in debt, represented by a tutor, has been, under the advice of a family meeting, sold at judicial sale, and the proceeds of the sale have been applied to the payment of the debts, and the balance has been divided among the heirs in pursuance to the advice and directions of a family meeting, the sale is valid and binding upon the heirs. In such a case the heirs of age having taken the residue of the price of the sale and divided it among themselves, before they can institute and prosecute a suit for the recovery of the property on the ground that the sale was a nullity, must return or offer to return the price they have taken or which inured to their benefit—they not being permitted to hold on to the price and at the same time prosecute a suit for the recovery of the property itself.

APPEAL from the Thirteenth Judicial District Court, parish of Tensas. *Hough*, J. *Julius Aroni* and *W. B. Spencer*, for plaintiffs and appellees. *Thomas P. Farrar* and *Sparrow & Montgomery*, for defendants and appellants.

LUDELING, C. J. This is a petitory action. The plaintiffs Lucien Bland and Ella Bland allege that they are children of Emeline Bland, deceased, and Maxwell W. Bland; that their mother left six children, viz: George and James S. Douglass, issue of her first marriage, and Lucien, Ella, Archibald and Richard, issue of her marriage with Maxwell W. Bland; that the plantation of their said mother, called "River Plantation," comprising fourteen hundred and forty-two and eighty-one-hundredths acres, was divided between the children of her first marriage and those of her second marriage, and that the Bland children received the "rear half," containing seven hundred and twenty-one and forty-one-hundredths acres. They allege further, that on the fourteenth day of October, 1859, while they were yet minors, the said Maxwell W. Bland, their father and tutor, applied to the court for an order of sale; that the order was granted, and that the sheriff proceeded to sell the said property in accordance with the terms fixed by a family meeting, and that at the sale J. J. Person apparently became the purchaser, although, in fact, their said tutor Maxwell W. Bland was the purchaser, contrary to law. They allege that the sale was a nullity, and pray to be declared the owners of twenty-three-fortieths thereof, and that the sale to J. J. Person, and the sale to Lloyd be annulled and set aside. Subsequently they filed an amended petition in which they aver that Richard Bland has died, and that Archibald Bland desires to become a party plaintiff, and they pray that their half sisters and brothers, issue of the marriage of their father with Mary Clark be cited through a *curator ad hoc*, and they pray that James S.

Douglass, through his assignee Rollins, George Douglass and Archibald Bland be made parties, plaintiffs.

There was judgment in favor of Lucien Bland, Ella Bland, George and James S. Douglass, for the use of A. Rollins for an undivided interest of six hundred and thirty-three acres of said rear half of River Plantation.

From this judgment the defendant has appealed. On the trial the defendant offered to prove that Maxwell W. Bland placed large and valuable improvements on the plantation during the marriage to show he was interested in the community, which was objected to on the grounds that it was inadmissible under the pleadings, and that defendant had admitted in his answer that M. W. Bland had no interest in the land in controversy; *second*, that the issue in this case was title to real estate, and the evidence was irrelevant: and *third*, that it was an attempt to prove title by parol. We think the objections not tenable. The object of the proof was to dispose of the allegation that the tutor could not buy at the sale, if it should be held that he had bought. If he was interested in the community or in the succession he had a right to purchase at the sale. The law authorizes tutors to purchase at the sale of the effects of the deceased, whose estate he may represent, when he is the surviving partner in community or an heir or legatee of the deceased. Revised Statutes, p. 9, section 12.

He administered the estate of his wife as tutor, as the creditors did not demand the appointment of an administrator. 2 An. 462; 4 An. 561; 10 An. 534; 14 An. 641, 567; 7 R. 24.

Another bill was taken to the reception of the testimony of James S. Douglass, to prove that Maxwell W. Bland had admitted to him in a private conversation many years before, that the estate was not in debt, on the ground that it was hearsay. We think the objection goes to the *effect* rather than to the admissibility of the evidence. Bland is made a party to this suit, and his admissions, as a general rule, may be given in evidence; but it is well settled that the loose declarations of a party, since dead, made in conversations, is the weakest kind of evidence and is entitled to little or no weight. Pagaud *v.* Anbesson, 10 La. 355; Stancil *v.* Gilmore, 6 An. 763; 2 R. 299; 7 R. 111; 6 An. 113, 146; 8 An. 277; 10 An. 279; 14 An. 274.

The plaintiff took a bill of exceptions to the reception of the testimony of Person, on the grounds that Lloyd, the defendant, can not dispute the title of his vendor, and he " can not dispute, vary or contradict his admissions in the authentic act" evidencing his purchase; that plaintiffs' title cannot be destroyed nor defendants' established by parol proof, nor by proof of fraud; and that as the law declares a purchase of property belonging to his ward by a tutor, through the agency of a third person or otherwise a nullity, proof that the price

enured to the benefit of the minors can not be admitted. The judge *a quo* correctly overruled the objections.

The objections were not applicable to the testimony offered. The testimony was introduced to prove that the estate of Mrs. Bland was in debt; that the price of the property sold went to discharge the debt of the estate and the surplus was divided among the heirs of age and the minors through the agency of their natural tutor, and to disprove the allegation that Person was the agent or representative of Bland, the tutor at the succession sale. 10 An. 784; 4 An. 555; 5 An. 248; 14 An. 710. The evidence proves the following facts:

In November, 1858, Maxwell W. Bland, tutor, petitioned for the convocation of a family meeting to advise as to the sale of the "rear half of the river plantation." The meeting was convoked; it advised the sale and fixed the terms thereof. In March, 1859, Lloyd, Sr., visited the said plantation and agreed to buy it at $70 50 per acre. Bland obligated himself in a penal bond to make him a perfect title and to guarantee the same. The "River plantation" had been previously divided between the heirs—the two Douglass children, who were of age, taking the front and the Bland children taking the rear half thereof. In October Bland obtained an order for the sale of the rear half, and in November, after due advertisement, the property was adjudicated by the sheriff to J. J. Person for the appraised value of the property and on the terms fixed by the family meeting. It appears that at this time the estate was indebted to J. J. Person & Co. in the sum of $90,000. J. J. Person swears that "Mrs. Bland and her heirs were indebted to me individually, about the first of January, 1860, $67,098 10, and to J. J. Person & Co., New Orleans, in an amount to make about $90,000." Person paid the cash installment and gave his two notes to the tutor, as appears from the *procès verbal* of the sheriff. Bland then procured an order of court on the advice and recommendation of a family meeting to authorize him to permit Person to cash his two notes, which appears to have been done.

In December Bland executed a power of attorney to Person " to sell the *whole* or any part of 'River Place,' and within a few days there-after Person sold to Lloyd the whole ' River Place.'"

In the act of sale, it is declared that "Maxwell W. Bland, of Washington county, Mississippi, is the owner of said land, but placed the same in his name for convenience, and he (Person), acting in the capacity of agent and attorney in fact of said Bland by virtue of a power of attorney, etc., hereby promises and binds his said constituent to warrant and forever defend said land," etc. Person's wife joins in the act and makes the usual renunciations, and Person signs the act for himself and for Bland. Person, in his testimony, says that " he does not know and does not suppose that Bland had any title to the land;"

but "he warranted to give Lloyd, Sr., his (Bland's) warranty, as I told him that my deed was only a quit claim deed."

From a careful analysis of the evidence in this case we have come to the conclusion that Maxwell W. Bland was not the purchaser at the sheriff's sale, but that J. J. Person was the purchaser; that he bought with the view to secure the payment of his debt and to aid M. W. Bland in carrying out his agreement to make a title to Loyd, Sr., and give him a warranty title.

That no fraud was intended and no injury resulted to the succession or heirs from the sale; that Lloyd bought in good faith and paid a very high price for the property, to wit, $97,823 57 in cash; that $90,000 of this amount was applied to the payment of the debts of Mrs. Emeline Bland and the heirs, and the remainder was divided, one-half to George and J. S. Douglass, and the other half to the tutor of the minors; but whether all the debts were created for the benefit of the estate, after Mrs. Bland's death or not, is unimportant. The price received enured to the benefit of the heirs, and they can not enrich themselves at the expense of the *bona fide* purchaser. In equity and under the law the plaintiffs can not sue for the nullity or rescission of this sale without first offering to restore the price paid by the defendant. C. C. art. 1902; 13 An. 213; 21 An. 383; 24 An. Barelli *v.* Gauche.

We are further satisfied that Bland, the tutor, was a legatee under the will of Mrs. Bland, and the surviving partner of the community, and that he was interested in the succession and in the community, and that he might therefore have lawfully purchased at the succession sale had he done so.

It will be observed that not only the rear half of the plantation was sold and delivered to Lloyd, but that the front half also was sold by Person, under the power of attorney from Bland. This front half had been up to that time in possession of the Douglass heirs, who were majors. How did Lloyd get possession without their consent, and why have they slept so long on their rights while a trespasser was enjoying the fruits of their property? Is it not fair to presume that the division of the property had been made only for the convenience of the heirs, and that when an opportunity was offered to sell the whole plantation for a large price they had consented to permit Bland, their stepfather, to sell the front half for the same purpose that Person alleged the title (which was in himself) to be in Bland, to wit, that he might make Lloyd a title with his warranty, in conformity to his penal obligation. Be this as it may, the plaintiffs have failed to establish the nullity of the sale to Lloyd. The sale to Person, which is attacked collaterally in this suit, is not shown to have been made to Bland, even if the right to attack the sale in this manner and without making Person, the vendee, a party, be conceded.

They must fail for the further reason that they have not offered to return the price which inured to their benefit.

It is therefore ordered that the judgment of the lower court be annulled and that there be judgment rejecting the plaintiffs' demands,. with costs of both courts.

TALIAFERRO, J., *dissenting.* I do not concur in the opinion of the majority of the court for the reason that, as I understand the evidence, the sale of a large and valuable estate belonging to minors of tender years, and derived to them by inheritance from their mother, whose estate at her decease is not shown to have owed a dollar, was sold by their tutor in pursuance of a private agreement made by him with Lloyd. It is clear to me that the tutor has in this instance by using the machinery of the law, which is intended to guard and protect the interests of minors, endeavored to divest his wards of their rights to the property in question. He first enters into an unconstitutional act of sale of the property to Lloyd, obligating himself to make a title free from all encumbrances, has it sold, buys it himself through a party, interposed then according to and in fulfillment of his agreement with the purchaser, makes him a title with full warranty. This act he did in contravention of a prohibitory law. Article 337 of the Civil Code is express, that " the tutor can not either personally or by means of a third person purchase, lease or hire the property of the minor or accept the assignment of any right or claim against his ward." Lloyd dealt with a party not having the right to sell, and therefore dealt with him at his peril. Bland, the tutor, had no right or interest in the property of the minors which could possibly give him any right to bid for or purchase their property. In order to bring more prominently into view the facts of this case, I will advert to some proceedings which had been taken previous to this contract between Bland and Lloyd.

After the death of Mrs. Bland, which occurred in 1849, an order of the district court was rendered for a division in kind of the tract of land, containing fourteen hundred and sixty acres, in order to effect a partition between the present plaintiffs and children of Mrs. Bland by a previous marriage  The land thus falling to the plaintiffs was theirs. by inheritance from their mother, and it was so decreed. In November, 1858, Bland, as natural tutor of his children, provoked the assembling of a family meeting for the purpose, it seems, to advise the sale of their land. The meeting advised the sale and recommended the investment of the proceeds in other lands. Their action was approved and homologated by the court, but no order was then rendered. In October, 1859, however, in order to carry out his contract with Lloyd,

entered into, as we have seen in March of that year, Bland applied for and obtained an order for the sale which was rendered according to the terms prescribed by the family meeting, to wit: One-third in cash, and the remainder in one and two years. The property was sold on the nineteenth of November, 1859, and Person, by attorney in fact, became the purchaser. In the deed of the sheriff Bland acknowledged to have received the money and the notes. Two days afterward, on the twenty-first of November, a petition, at the instance of Bland, was presented to the court, representing that Person wished to pay the two notes in cash, and praying that a family meeting be convoked to authorize the tutor to accept the proposition. The meeting was held on the twenty-fourth, and the authorization prayed for was granted, and the order rendered accordingly. On the twenty-seventh of December, 1859, before a notary in New Orleans, Bland executed a power of attorney authorizing Person as his agent to convey title to Lloyd of the land in question, and on the second of January, 1860, Person in the capacity of Bland's agent and attorney in fact by a notarial act made the deed to Lloyd. In this act of sale Person, who figured as the purchaser of the land on the nineteenth of November preceding made the following declaration:

"And the said James J. Person declares that Maxwell W. Bland of Washington county, Mississippi, is the owner of said land, but placed the same in his name for convenience, and he acting in the capacity of agent and attorney in fact of said Blank, by virtue of a power of attorney passed before the undersigned notary on the twenty-seventh of December, 1859, hereby promises and binds his said constituent to warrant and forever defend said lands against all legal claims and demands whatever, and guarantees this title to the same in every respect."

This act of sale was accepted and signed by Lloyd. Lloyd sets up in his answer that if there were fraud and collusion between Bland and Person that he was no party to it, and ought not to suffer on that account. He further charges in his answer that at and prior to the date of said conveyance to Person the said succession and heirs of Emeline W. Bland, plaintiff's mother, were for and on account of said property very largely indebted to said Person, who had been for a series of years the factor and commission merchant for said succession; that the said Person applied the proceeds of the property to the payment of that indebtedness of the plaintiffs, a small portion being used by Bland to carry on the Buck Ridge plantation, the property of the plaintiffs. Lloyd accepted a deed of conveyance from Bland which made known to him that Bland and not Person was the purchaser of the property, and therefore that he purchased at his peril. The allegation that Mrs. Bland's succession was burdened with debt, is not

made out by the evidence. Neither is it shown that the indebtedness alleged was contracted on account of the minors. Mrs. Bland died in 1849; the dealings with Person as factor and merchant did not commence until 1851 or 1852, and probably later. Person testified as a witness that the plantation was sold in 1860 to pay the debts of Mrs. Bland and heirs and to enable Bland and the children of the first marriage to divide the property. In the petition of Bland for the family meeting that was convened on the thirtieth November, 1858, and which authorized the sale, there is not a word about the indebtedness either of Mrs. Bland's succession or of the minors. No necessity was declared to exist for a sale of a valuable and productive plantation. The act was put on the ground of expediency. The question presented for the consideration of the family meeting was whether under the circumstances it would not be to the interest of the minors that the land should be sold and the proceeds reinvested in other lands. There is no exhibition of the revenues of the plantation and the expenses of the minors showing that the expenses necessarily incurred by the tutorship exceeded the revenues of the minors.

The heavy indebtedness pretended to exist against the succession of Mrs. Bland and held up as a justification of the sale of the minors' estate is certainly not shown. On the contrary, all the facts in the record tend to satisfy me that this indebtedness was created by the tutor himself upon the credit of his children's estate, to subserve his own purpose, and that little or none of it inured to the benefit of the minors. It surpasses belief that an estate of the productive capacities of that falling to these minors could not support them, but in the course of less than ten years should fall in debt ninety thousand dollars. Even had these been debts against Mrs. Bland's succession (and none whatever are shown), they should have been extinguished and large net revenues preserved by their tutor, if he had discharged his duties. As to the pretensions of the defendant that he was an innocent purchaser and should be protected, I rather think the authority of justice more properly invoked by the plaintiffs to shield them from acts against which they were defenseless and which were concocted and carried out by the one to whom mainly the law confided their rights. I think the judgment of the lower court should be affirmed.

WYLY, J. I concur in this dissenting opinion.

Rehearing refused.