188 So. 707

**WALLACE v. CASSIERE et al.**

No. 35193.

April 3, 1939.

Rehearing Denied May 1, 1939.

Chandler & Chandler and H. M. Holder, all of Shreveport, for appellant.

C. B. Prothro, of Shreveport, for appellees.

ODOM, Justice.

Mrs. Marguerite McGuire Wallace qualified as natural tutrix of her two minor children on July 29, 1933. An abstract of the inventory of the property owned by the minors was recorded in the mortgage records of Caddo Parish. Subsequently, on November 14, 1933, Mrs. Wallace acquired individually and in her own name certain lots, together with the residence thereon, in the City of Shreveport, and the minors' legal mortgage, resulting from the recordation of the abstract of inventory in the tutorship proceeding, operated as a first mortgage on this property. Civil Code, Article 322.

In April, 1935, Mrs. Wallace presented a petition to the court, alleging that she had purchased the property above referred to and that it was subject to the minors' legal mortgage, and that "the home and improvements located on said property hereinabove described are rapidly deterio-

rating *to the prejudice of the minor's general and tacit mortgage on the said property,* in that the roof on said home is leaking and badly in need of repairs, the interior and exterior woodwork of the home should be painted, for purposes of preservation, and the home should have the rotten woodwork therein replaced by new and substantial wood, together with other necessary repairs which should be immediately made for the preservation of said home." (Italics ours.)

She alleged that it was necessary for her to borrow the sum of $1,500 in order to make the repairs, but that she was unable to do so for the reason that the minors had, under the law, a first mortgage on the property; and that, in order that she might be able to borrow funds necessary for the preservation of the house, it was necessary that the minors' mortgage be subordinated to a special mortgage which it would be necessary for her to give in order to borrow said amount.

She prayed that a family meeting be convoked to advise as to the best interest of the minors and to recommend a course to be followed by her in the premises.

The family meeting was convoked by order of the judge and recommended that Mrs. Wallace borrow the sum needed and that, to secure the payment of the same, she execute a special mortgage on her property, and recommended further that the minors' mortgage be subordinated to such conventional mortgage as she might make. The proceedings of the family meeting were approved by the judge, and it was expressly ordered that the under-tutor for

said minors "join with petitioner in the execution of the special mortgage on the property described in the proces verbal, for the sole purpose of subordinating and making subsequent in rank thereto the general mortgage and extract of inventory recorded in behalf of the minors in Mortgage Book 207, page 751, of the Records of Caddo Parish, La., all of which shall be done in accordance with the mortgage annexed to and made a part of the proces verbal and as herein prayed for."

It appears from the record that Mrs. Wallace was not able to pay the $1,500 note at its maturity, and for that reason, on July 22, 1936, she presented a petition to the court, alleging that the home located on the property "itself is presently mortgaged in the sum of $1500.00 with accrued interest thereon in amount of $153.84; all of which is past due and unpaid and the mortgagee threatens foreclosure proceedings against said described property; that there is due and unpaid the 1935 State and Parish Taxes, and City Taxes, aggregating a total of $95.00; also due and unpaid insurance premium of $30.00, also a judgment in amount of $15.78 with interest and costs, in favor of Central Lumber Company, recorded November 29, 1935, in Mortgage Book 231, page 12, Mortgage Records of Caddo Parish, La.

"Petitioner shows that she does not have sufficient money to satisfy said special mortgage, interest, taxes, insurance premium and the judgment, and to obtain the necessary moneys to satisfy said present indebtedness she must execute a special mortgage covering said property and it will

be further necessary that the minors' general mortgage arising from the extract of inventory recorded in Mortgage Book 207 page 751, be subordinated to the said special mortgage."

She prayed that a family meeting be convoked to advise and to recommend whether under the circumstances the minors' mortgage should be subordinated to the special mortgage which she proposed to execute in order to raise funds to pay and satisfy the outstanding and past-due $1,500 mortgage which she had previously executed.

The court ordered that a family meeting be convened as prayed for. According to the proceedings of that family meeting, which were made part of the record in this case, the family meeting found that the $1,500 special mortgage and accrued interest, together with the 1935 state, parish, and city taxes aggregating $95 and the insurance premium amounting to $30, and a judgment of $15.78 with interest and costs, were all due, *"to the prejudice of the minors' general mortgage on the said property"*. The proces verbal of the family meeting recites that: "whereas Marguerite McGuire Wallace does not have sufficient moneys or funds to satisfy said enumerated indebtedness *and to preserve the property and prevent foreclosure proceedings* the family meeting advises and unanimously recommends" that she execute a special mortgage and one promissory note for the sum of $2,000, the mortgage to operate on the property owned by Mrs. Wallace; that the said special mortgage be placed of record in the mortgage records of Caddo

Parish, and that "The Judge or Judges of the First Judicial District Court in and for the Parish of Caddo, State of Louisiana, order that said minors' general mortgage and extract of inventory recorded in Mortgage Book 207 page 751, be subordinated to the said special mortgage hereinabove described, a copy of which is annexed hereto and made a part hereof; that Irvine G. Penn, undertutor for the said minors, and on behalf of the aforesaid minors, and by order of court, join in the said special mortgage for the purpose of subordinating the general mortgage and extract of inventory." (Italics ours.)

The deliberations of the family meeting were approved and homologated by the district judge, his judgment especially authorizing the under-tutor for the minors to join with Mrs. Wallace in the execution of the special mortgage "for the sole and only purpose of subordinating and making subsequent in rank to this mortgage the general mortgage and extract of inventory in behalf of the minors".

Mrs. Wallace borrowed the sum of $2,000 from Germain Cassiere, the defendant in the present suit, and, to secure the debt, executed the special mortgage authorized by the family meeting and approved by the judge.

Cassiere's note not having been paid when due, he attempted to foreclose the mortgage by executory process, and on August 22, 1938, Mrs. Wallace brought the present suit, alleging that she was indebted unto her minor children in the sum of approximately $5,000 and that their mortgage, resulting from the recordation of

the abstract of inventory, was superior in rank to that of the foreclosing creditor; that, whereas the so-called family meeting, convoked and held in July, 1936, had advised and recommended that the minors' mortgage be subordinated to that held by the defendant Cassiere, and that, whereas an attempt was made to subordinate the minors' mortgage to his, yet the proceedings of the family meeting and the court's approval thereof were utterly null and void for various reasons, among them being that as a matter of fact there was no family meeting; that the persons designated to compose said family meeting never in fact met together; that the proceedings and the proces verbal, as now appear of record and as approved and homologated by the judge, were prepared by an attorney representing Cassiere and were carried to, and signed by, the several members separately; that the under-tutor of the minors was not present when the proceedings were signed, and that, after each member of the family meeting had signed, the proceedings were then carried to the under-tutor, who signed and approved them while in another parish.

She prayed for judgment annulling and setting aside the proceedings of that family meeting and the judgment of the court homologating the same, in so far as the same authorized the subordination of the minors' mortgage to Cassiere's mortgage. In a subsequent petition she prayed that the sheriff be prohibited from selling the property unless the price offered was sufficient to pay the minors' mortgage, and that their mortgage be decreed superior in rank to that of the foreclosing creditor.

The defendant in limine interposed a plea of estoppel, the basis of which was that, plaintiff and her minor children having received and enjoyed the benefits of the money borrowed from the defendant, she is now estopped from attacking the family meeting proceedings authorizing the loan and the subordination of the minors' mortgage, without which proceedings she could not have secured the loan from Cassiere; that her pleadings affirmatively show that she individually and her minor children did receive the benefit of the amount borrowed from the defendant, as authorized by the said proceedings.

Reserving the benefit of this plea, defendant answered, denying that the proceedings were null and void, and especially alleged that, if there were any irregularities in said proceedings, he had no knowledge of them.

There was judgment in favor of the plaintiff, annulling the proceedings of the family meeting of July 22, 1936, and in favor of defendant, decreeing that his mortgage was superior in rank to that of the minors, to the extent of $1,746.84, this being the amount found necessary to pay the special mortgage of $1,500, plus interest, taxes, and the small judgment in favor of the lumber company.

The plaintiff appealed. Defendant answered the appeal, praying that the judgment be reversed in so far as it declared the proceedings of the family meeting void, and that it be amended so as to recognize defendant's mortgage of $2,000, plus all interest and attorney's fees, to be superior in rank to that of the minors.

The plea of estoppel filed by the defendant is well founded and should have been sustained by the trial judge. The proceedings of the family meeting held July 22, 1936, at the request of Mrs. Wallace, acting for herself and for the benefit of her minor children, together with the judgment approving and homologating the same, were filed in evidence in this proceeding. There was also filed in evidence the application of Mrs. Wallace to have said proceedings approved and homologated. The transcript as brought up shows that the proceedings were regular and conformed to the letter of the law in every detail. There is nothing to indicate the slightest irregularity. Evidently the district judge thought the family meeting had been held in conformity with the law; otherwise he would not have approved the proceedings.

Mrs. Wallace, who appears in the present proceeding on behalf of, and in the interest of, her minor children, does not allege that any fraud was perpetrated, or intended to be perpetrated, against her minor children. She does not allege that, when she made application to the court to have said proceedings approved and homologated by the judge, she was ignorant of the facts and circumstances connected with the entire proceeding. She alleged that the proceedings were null for the reason, among others, that the under-tutor was not present. On the trial of this case she testified that she had personally carried the proceedings to the under-tutor and procured his approval of them. After she had done this, she petitioned the court to homologate the proceedings and thereafter executed the special mortgage in favor of Cassiere, and received the proceeds thereof. It is perfectly clear that, when Mrs. Wallace petitioned the court to approve and homologate the proceedings, she was familiar with all the facts and circumstances surrounding the holding of the family meeting.

While her counsel suggested in oral argument before this court that there was nothing in the record to show that she used the money borrowed from Cassiere to pay and satisfy the first $1,500 special mortgage operating against the property, the interest, the taxes, the judgment, and the premium on the fire insurance policy, the record leaves us in no doubt whatever that she did, as a matter of fact, use Cassiere's money for those very purposes.

According to plaintiff's petition filed July 22, 1936, the minors' mortgage had been, by order of the court, subordinated and postponed to the $1,500 mortgage which was then past due, and the holder thereof was about to foreclose, and it was necessary for the protection of her minor children that she borrow $2,000 in order to prevent foreclosure proceedings. In short, according to her own petition, the property, which was designated throughout as a home and which was the only security the minors had for the payment of their claim, was about to be swept away from them, and would be, unless she were permitted to secure another loan, and she could not secure a second loan without having the minors' mortgage subordinated to it, as had been done when the first mortgage was made.

Now, if it be conceded that there were irregularities in the holding of the family

meeting, the question is whether the plaintiff, who appears in this proceeding as tutrix of her minor children and sues in their behalf, can successfully attack and have set aside those proceedings. Under the circumstances shown to exist, equity and good conscience forbid her to do so. She is estopped. The minors have not been defrauded of their rights. On the contrary, it is perfectly clear not only that the proceedings now attacked were taken out for their benefit, but that the borrowing of the money and the subordination of their mortgage to that of the defendant, as authorized by those proceedings, did actually result in a very substantial benefit to them, in this: that otherwise the property owned by their mother, which was the only security they had, would have been sold by foreclosure proceedings, under the $1,500 special mortgage.

To permit plaintiff to prevail in this case would be to permit her and the minors to reap an advantage gained by virtue of the proceedings now attacked, at the expense of the defendant Cassiere. Article 1965 of the Revised Civil Code says that "no one ought to enrich himself at the expense of another". In the recent case of Burk v. Livingston Parish School Board, 190 La. 504, 182 So. 656, 657, this court recognized and approved the following principles, which are as old as jurisprudence itself:

(1) "Neither law, equity, nor good conscience will allow one to claim the benefits and at the same time escape the obligations of an undertaking."

(2) "A person cannot accept the benefits of an act and repudiate its obligations."

In support of these general principles we cited a long list of authorities, which need not be repeated here. The above general principles are reiterated and again approved in the more recent case of Turfitt v. Police Jury of Tangipahoa Parish, 191 La. 635, 186 So. 52, decided January 10, 1939.

The question of equitable estoppel, or estoppel in pais, is discussed at great length under the general heading "Estoppel" in Volume 19, American Jurisprudence. As to "Acceptance of Benefits", see Section 64, page 682, of that volume.

██ It is suggested by counsel that these principles are not applicable to minors. There is no merit in the suggestion, for the reason that it definitely appears that the minors themselves have been benefited by the very proceedings now attacked. In the case of Coulson v. Wells, 21 La.Ann. 383, the court held, according to the second paragraph of the syllabus, which is a correct statement of the ruling:

"Where community property has been sold and the proceeds applied to the payment of community debts for which it was mortgaged, the minors cannot claim restitution in integrum without showing injury from the sale, and paying or tendering the amount which has inured to their benefit."

In 1828 this court said, in the case of Daquin et al. v. Coiron et al., 6 Mart., N.S., 674, 684:

"It is now the settled jurisprudence of the court, that when the property of minors is sold, to pay the debts of their ancestors, from whom that property is derived, they cannot recover the property on the ground

of the proceedings being informal, without repaying the money which has been applied to their benefit."

To the same effect are the following cases: Andrews v. Ackerson, 8 Mart., N.S., 205; Foutelet v. Murrell, 9 La. 299; Kemp v. Rowly, 2 La.Ann. 316; Sharkey v. Bankston, 30 La.Ann. 891; Heirs of Burney v. Ludeling, 41 La.Ann. 627, 6 So. 248; Bland v. Lloyd, 24 La.Ann. 603; Kellogg v. Duralde, 26 La.Ann. 234; Succession of Monette, 26 La.Ann. 26; Del Bondio v. New Orleans Mutual Insurance Ass'n, 28 La.Ann. 139.

For the reasons assigned, the judgment appealed from is set aside, and it is now ordered that the plea of estoppel filed by defendant be maintained and plaintiff's suit be dismissed at her costs.

HIGGINS, J., absent.