WESTERN DIST.
*September,* 1840.

LE BLANC
*vs.*
HIS CREDITORS.

---

## LE BLANC *vs.* HIS CREDITORS.

APPEAL FROM THE COURT OF THE FIFTH DISTRICT, FOR THE PARISH OF
ST. MARTIN, THE JUDGE OF THE SIXTH PRESIDING.

An order or judgment of the Court of Probates, erasing the legal and special mortgage of a minor, under the act of 1830, and giving a special mortgage *on part only,* of the property of the tutor, in lieu of the first, cannot be attacked collaterally, when third persons have purchased property released by these proceedings ; it must have its effect until reversed or annulled in a direct proceeding or action.

So in the suit of a minor, on arriving at the age of majority, to annul an order or proceeding of the Probate Court, it cannot effect the rights of third persons, who purchased under the faith of these proceedings, sanc-tioned by the Court of Probates.

This is an opposition to the tableau of distribution, filed by the syndic of the creditors of Edward Le Blanc, the ceding debtor.

On the 23d of May, 1823, Edward Le Blanc was appointed dative tutor to Modeste Le Blanc, the opponent in this case, and gave a special mortgage on a plantation and four slaves to secure the payment of the sum of one thousand four hundred and seventy-two dollars and thirty-seven cents ; as is alleged, in pursuance of the act of 1817, which authorized tutors to give *special mortgages in lieu of security for their administration.*

The opponent alleges, that at the time of the appointment of her dative tutor, his property all became liable and tacitly mortgaged for the security of her debt. She further states, that in 1832, with the advice of a family meeting, her said tutor attempted to have the mortgage on the slaves, which were liable under her original and legal mortgage, released, and gave a special mortgage on his plantation. That the syndic of his creditors have not placed her on the tableau as a privileged creditor, except for the proceeds of the plantation last mortgaged, which sold for only one hundred and seventy-five dollars ; whereas she claims to have the first privilege on all the property surrendered.

The syndic pleaded the general issue, and averred that the special mortgages were valid. That the plaintiff has been placed as a privileged creditor for the proceeds of the land last mortgaged, which is all the privilege to which she is entitled.

It is shown by the evidence that, in 1832, on application to the Court of Probates, with the advice of a family meeting, the insolvent, Edward Le Blanc, obtained a decree or judgment, annulling all the former mortgages in favor of the minor, (this opponent) and executed a special mortgage on his plantation alone, in lieu thereof. Three of the four slaves, included in and subject to the former mortgages, are admitted to have been surrendered and sold ; and their proceeds would more than pay the opponent's claim.

After the proceedings in the probate court, erasing the first mortgage and executing the special mortgage on the plantation alone, several creditors obtained and recorded judgments against the ceding debtor, before the surrender. They have been placed on the tableau as general mortgage creditors.

The whole case turns on the validity of the proceedings purporting to annul and cancel the first mortgage, and give a second on a particular piece of property. The opponent insists they are null and void.

There was judgment for the plaintiff in opposition, allowing her a privilege and mortgage on the proceeds of the three slaves sold by the syndic, for the amount of her demand, with interest. The syndic appealed.

*Voorhies*, for the opposing creditor, contended, that the mortgage given by the insolvent, under the act of 1817, ought to have its full force and effect ; the obligation arising under it, cannot be impaired by any subsequent legislative enactment : " A law can prescribe only for the future; it can have no retrospective operation, nor can it impair the obligation of contracts." *Louisiana Code, article 8.*

2. The mortgage in question was given under the act of 1817, which authorized tutors to give special mortgages, in lieu of security, for their administration ; and no law then existing authorized *its change or release* ; it became a vested right, and could not be impaired by any subsequent legislative enactment. Hence, all the proceedings which were had in July, 1832, by virtue of the act of 1830, for the purpose of annulling this mortgage, were absolutely null and void. *Constitution of Louisiana, article 6, section 20.* 1 *Louisiana Reports*, 347.

3. Contracts are always made without reference to the laws in force at the time of making them ; this mortgage or contract was, therefore, made with reference to the laws in force in 1823, the time when it was made. No laws enacted after could impair its obligation. This principle is too plain to admit of any doubts.

4. Granting for a moment that the tutor had the right, un- the act of 1830, of changing this mortgage, was it done accordingly? No. There was no change of the mortgage, but *purely and simply a release on the slaves.* What property was mortgaged in 1832? Was it other than that contained in the first or original mortgage? No, the same land was mortgaged, excluding the slaves! Does this constitute "*changing a special mortgage,*" or does it simply amount *to a release of mortgage?* If it is simply a release, does the act of 1830 authorize it? If not, can the family meeting and the probate judge, in their proceedings, which are against law, destroy the rights of the appellee? They cannot. The duties of family meetings are determined by special laws, and are restricted to particular objects, and, whenever their acts are not confined to those restrictions, they have no effect, and must be treated as mere nullities. The only duty which the acts of 1830 imposed on the family meeting, was *to recommend a change of the special mortgage.* *Act of* 1830, *page 46.*

5. The judgment of the probate court, annulling or cancelling the mortgage, is an absolute nullity. It is a court of limited jurisdiction, and among the powers delegated to it, this is not one of them ; it had no jurisdiction *ratione materiæ.* *Code of Practice,* 92.

6. The proper time for settling a question of privilege, against an insolvent estate, is upon the filing of the tableau. If the syndic refuses to place a creditor thereon, as he demands, or as is right, he may compel him by opposing the tableau ; but the syndic has no right to complain, and he should not be allowed to appeal. 4 *Martin, N. S.,* 462. 3 *Idem.,* 553. 7 *Idem.,* 131. 1 *Louisiana Reports,* 172. 11 *Idem.,* 531.

*T. H. Lewis,* for the syndic and appellant, insisted that, by the law, as it stood in 1823, *lands only,* and not slaves, could be specially mortgaged by tutors in favor of their minors. *Session acts of* 1811, *section 5, page 32, Idem.,* 1817. *section* 1, *page* 120.

2. By the act of 1830, section 8, page 48, it is provided that the property to be mortgaged by a tutor, &c., shall be first appraised.

3. The judgment of the Probate Court, annulling a former mortgage, is in full force, and cannot be collaterally inquired into or attacked. It cannot be attacked but by direct action of nullity. Purchasers under judgments of the Probate Court, must be protected. 9 *Louisiana Reports*, 196. 14 *Idem.*, 469.

*Martin, J.*, delivered the opinion of the court.

The syndic is appellant from a judgment, by which the tableau of distribution, filed by him is amended, and Modeste Le Blanc, whose dative tutor the insolvent was, is placed thereon as a mortgaged creditor, for the whole of her claim; the syndic having put her down for a small part only.

In 1823, the insolvent was appointed dative tutor to the minor, and gave a special mortgage on a plantation and four slaves; and in 1832, he obtained an order or judgment of the Court of Probates, cancelling and erasing this mortgage, and also the legal mortgage existing in favor of said minor, and gave a new one on a small plantation alone. This was done in pursuance of the act of the legislature, approved March 11th, 1830, entitled "an act in addition to the laws now in force, relative to tutors and curators of minors." The plantation or land thus mortgaged, was surrendered, and sold by the syndic for eight hundred dollars, when the husband of the appellee became the purchaser; but on failing to comply with the terms of sale, it was sold a second time, at his risk and cost, for only one hundred and seventy-five dollars; for this sum she is placed on the tableau, as a mortgage creditor. She claims to be ranked as a general mortgaged creditor, on all the property of her tutor, for her entire claim, amounting to one thousand four hundred and seventy-two dollars and thirty-seven cents.

After the erasure of the first mortgage, and before the surrender, several creditors obtained judgments and had them

An order or judgment of the Court of Probates erasing the legal and special

recorded against the tutor; and they were collocated as such on the tableau.

The only question which this case presents, is whether *the order* of the Court of Probates, accepting the last mortgage, and erasing and cancelling all the previous ones, is not a judgment which must have its effect, until it be reversed or annulled.

The District Court appears to have solved this question in the negative. We are of opinion it erred. In the case of *Lesassier* vs. *Dashiell,* 14 *Louisiana Reports,* 467; we held, "that whatever may be the result of a suit, by which a minor, on arriving at the age of majority, seeks to annul an order or proceeding like this, it cannot affect the rights of third persons, who purchased under the faith of these proceedings, sanctioned by the Court of Probates."

The rights of the judgment creditors cannot be affected, otherwise than by reversing or annulling the judgment of the Court of Probates; as by that judgment the special mortgage of the appellee was cancelled, as regards the slaves, on whose proceeds she seeks to claim a prior mortgage; and also, any legal or general mortgage which she might have had on the property of her tutor, up to the time of its rendition.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed, and that the opposition be dismissed; the appellee paying costs in both courts.

WESTERN DIST.
*September,* 1840.

LE BLANC
*vs.*
HIS CREDITORS.

mortgage of a minor, under the act of 1830, and giving a special mortgage *on part only,* of the property of the tutor, in lieu of the first, cannot be attacked collaterally, when third persons have purchased property released by these proceedings; it must have its effect until reversed or annulled in a direct proceeding or action.

So, in the suit of a minor, on arriving at the age of majority, to annul an order or proceedings of the Probate Court, it cannot effect the rights of third persons, who purchased under the faith of these proceedings, sanctioned by the Court of Probates.