No. 955

First Circuit

HOOVER v. PENNINGTON
(LUCY LOCKHART, Intervener)

(May 3, 1932. Opinion and Decree.)

Rownd & Warner, of Hammond, attorneys for plaintiff, appellant.

Ellis, Ellis & Ellis, of Amite, attorneys for intervener, appellee.

MOUTON, J.  Mathew Lockhart died in Tangipahoa in 1921.  An inventory was taken of his property which was in community with Lucy Lockhart, his surviving spouse, who qualified as the natural tutrix of Gordon, Selby, and Beida Lockhart, minors at that time.

In 1919, about two years before his death, Mathew Lockhart executed a mortgage on three small tracts of land in favor of Simpson Sharp for $3,000, represented by a promissory note for that amount.  There was no consideration for this note, which was returned by Sharp to Mathew Lockhart a short time before his death, and which was found among his papers.

Sharp testifies that Lockhart was not his debtor in any amount when the mortgage was executed.  The fact is that it was known by all that the note was fictitious.

The note found its way in the hands of Clarence Pennington, the son-in-law of Mrs. Lockhart, widow of Mathew Lockhart, and without any consideration being given by Pennington for the note.  The fact is that in a counter letter given by Pennington to Mrs. Lockhart, he admits that he was not the owner of the note, but that it belonged to her.

Executory proceedings were however taken out on this note in the name of Pennington, under which the estate of Lockhart was sold at sheriff's sale in November, 1926, at which the mortgaged property was bid in by Clarence Pennington.

In the case of Pons v. Yazoo & M. V. R. Co., 131 La. 313, 59 So. 721, the promissory note on which plaintiff inaugurated his foreclosure proceedings, the evidence showed, had been paid.

The court held therein that no title could be conveyed to an adjudicatee on a mortgage note that had been extinguished by payment.  The court had previously ruled likewise in Pons v. Yazoo & M. V. R. Co., 122 La. 156, 47 So. 449.

Obviously, the reason underlying these two decisions is that as the note evidenc-

ing the obligation had been extinguished by payment, the mortgage, a mere accessory, had ceased to exist, and a sale thereunder could transfer no title.

Here, the estate of Lockhart owed nothing on the note, which therefore never had any legal existence and could not be extinguished by payment. The mortgage likewise had no existence, as it had no principal obligation to support it as an accessory.

The adjudication to Pennington was therefore null and conveyed no title to him for the reason stated in the decisions, above cited. Pennington took this view of the situation, as appears from his counter letter to Mrs. Lockhart, above referred to, wherein he says the property was bid in his name for Mrs. Lockhart's convenience, but that it remained her property.

In 1929, for what purpose it is hard to conceive, John Graham was appointed administrator of the succession of Mathew Lockhart, and the property in question was sold to pay debts, and was bid in at the sale in the name of Pennington, who, however, appears in these proceedings and disclaims any ownership thereto. Hence it is clearly established that Pennington never acquired ownership of the property and which remained in community between Mrs. Lockhart, surviving spouse, and five children, issue of her marriage with Mathew Lockhart, three of which were minors at his death, and two majors.

On November 24, 1926, about two months after Pennington had executed his counter letter recognizing Mrs. Lockhart as the owner of the property, he, by authentic act, appointed Mrs. Lockhart his agent and attorney in fact to lease, sell, alienate, or mortgage any property owned by him situated in Tangipahoa, but more particularly the land in question, and which is involved in this litigation, as will hereinafter appear.

November 27, 1926, Mrs. Lockhart, appearing in her capacity as the agent of Clarence Pennington by virtue of the power of attorney hereinabove mentioned, mortgaged the property in question in favor of Julius A. Hoover, plaintiff in this suit, for $1,200, for money loaned by Hoover, represented by three notes; one for $100, and two for $550. The note for $100 was paid; this suit being instituted under executory process by Hoover, plaintiff, against Pennington, defendant, for the sale of the mortgaged premises to satisfy the two notes amounting to $1,100, with 8 per cent interest, less $25 paid on interest and 25 per cent for attorney's fees, as stipulated in the act of mortgage.

Mrs. Lockhart, filed an intervention in this case for herself, individually, and for her minors, Gordon, Selby, and Beida, asking for an injunction to prohibit the sale of the mortgaged property.

Gordon and Selby, having been emancipated, joined the two major heirs, praying to be recognized owners of the property in the proportion of one-fifth of one-half each.

As hereinabove stated, the mortgaged land never having been acquired by Pennington, as adjudicatee in foreclosure of a mortgage which was absolutely null, it follows that its ownership remained in the major, minor heirs, and Mrs. Lockhart, in the proportion of one-half for the heirs, and one-half for Mrs. Lockhart, surviving widow.

It is appropriate to state here, that in

granting the mortgage to Hoover, plaintiff in these proceedings, Mrs. Lockhart had no authority from the major heirs to represent them, and no power by family meeting or otherwise to represent Gordon and Selby, who have since been emancipated, or Beida, the minor, now under her tutilage. No plea of estoppel was filed against the right of the two majors and the two emancipated minors to attack the mortgage, and so far as it affects their undivided interest in the property; but even if that defense had been raised such a plea would be unavailable to Hoover, plaintiff herein.

A plea of estoppel is however urged by Hoover against the right of Mrs. Lockhart, and the minor, Beida, to attack the validity of the mortgage, and their claim for an injunction to arrest the sale.

In so far as Beida, the minor is concerned, such a defense by Hoover has no merit, as Mrs. Lockhart, her tutrix, did not have the shadow of any legal authority to affect or bind the undivided interest of that minor in the property mortgaged to plaintiff.

It is different, however, with Mrs. Lockhart, where plaintiff in his answer to her intervention specially pleads that, as she represented Clarence Pennington in the act of mortgage granted to Hoover for the money loaned by him upon which these executory proceedings have been issued, she is now estopped to deny the validity of that mortgage.

In the case of Americus Watson v. Succession of Thomas Barber, 105 La. 456, 29 So. 949, 951, where the plea of estoppel was urged as a defense, the court, in passing on that issue therein presented quoted from Hermann on Estoppel, as follows:

"Where the party solemnly admits a fact by a deed under his hand and seal, he is estopped not only from disputing the deed itself, but every fact which it recites."

It would hardly be contended that Mrs. Lockhart could dispute the deed itself or the notes which she signed in her capacity of agent for Pennington. In the act of mortgage executed by Mrs. Lockhart for Pennington, she grants it on the property in question to which Pennington, in the authentic act constituting her his agent, refers as property owned by him situated in the parish of Tangipahoa. This mortgage is granted under this power of attorney as is therein stated, and on the property mortgaged as belonging to Pennington, which, we find, constitutes a recital of facts that Mrs. Lockhart is estopped under the authority, above cited, from denying or questioning.

The truth is, that the money loaned by Hoover went into the hands of Mrs. Lockhart, who, it seems, became dissatisfied with the deal, because she expected to sell the property to Hoover instead of mortgaging it. Mrs. Lockhart seems to have made an unwise disposition of the money borrowed in the way of payments for attorney's fees and costs of court. If she made a mistake in that respect, Hoover was certainly not responsible for it. In her testimony she admits owing Hoover $1,000, and testifies she expects to pay him when she gets the money. The truth of the matter is that the mortgage was for her benefit, and that, to accommodate his mother-in-law, Pennington permitted the mortgage to be given in his name, and to be so recorded. Pennington also, strange to say, appears in these complicated proceedings asking for an injunction to stop the sale. He alleges that while the title was taken in his name it was so placed to protect the interest of the minors of Mrs. Lock-

hart, and that to permit the sale would work an irreparable injury to him and to the minor heirs. As he disclaims any rights or title to the property, we cannot see how his interests would be affected, except in so far as the proceedings have been instituted against him; but he has brought this about by his own vountary acts, and for the protection of the minors, and as to which he has no ground for a legal complaint.

We hold that the minor's interest and those of the other heirs in the property cannot be affected by the mortgage, thus affording the protection to the minors that Pennington, according to his averments, is seeking to obtain by his intervention.

The lower court rendered judgment annulling, in toto, the mortgage granted by Clarence Pennington to plaintiff, Julius A. Hoover, on November 27, 1926, for $1,200, through his agent, Mrs. Lucy Lockhart, and all the proceedings in the foreclosure of that mortgage. This part of the judgment must be reversed, in so far as it liberates from that mortgage the one-half undivided interest of Mrs. Lucy Lockhart in the property mortgaged.

The executory process obtained by plaintiff herein will be maintained to the extent that it affects the interest of Mrs. Lockhart in the property, as above indicated, but the 25 per cent for attorney's fees stipulated for in the mortgage will be reduced to 10 per cent, usually accorded in such cases; the judgment maintaining the injunction in so far it prohibits the sale of the undivided half of Mrs. Lockhart in the property mortgaged will be reversed.

It is therefore ordered, adjudged, and decreed, that the judgment of the lower court decreeing the total annulment of the mortgage granted by Clarence Pennington for $1,200, November 27, 1926, in favor of plaintiff on the property described in the judgment below, be, and is hereby, annulled, avoided, and reversed, in so far as it affects the undivided one-half interest of Mrs. Lucy Lockhart in the property mortgaged; and the injunction to that extent is hereby dissolved.

It is further ordered and decreed that plaintiff have judgment against defendant for the sum of $1,100, with 8 per cent per annum interest thereon from November 7, 1927, until paid, and 10 per cent additional on that amount as attorney's fees, less a credit of $25, paid on account of interest on December 5, 1928; that the executory proceedings herein issued be maintained; that the one-undivided half of the property mortgaged November 27, 1926, belonging to Mrs. Lucy Lockhart, be sold at public auction, and that the proceeds realized from the sale of the undivided half of the mortgaged property be applied to the payment of plaintiff's mortgage, reserving to plaintiff his right of action against Mrs. Lucy Lockhart should the amount realized from the sale be insufficient to satisfy plaintiff's mortgage; in other respects the judgment be maintained, and that defendant pay the cost of these proceedings.