## DIMMER et al. v. SPEARMAN et al.

### No. 5518.

Court of Appeal of Louisiana. Second Circuit.

Oct. 29, 1937.

Rehearing Denied Dec. 3, 1937.

Writ of Certiorari and Review Denied Jan. 10, 1938.

W. B. Massey, of Shreveport, for appellants.

Wilkinson, Lewis & Wilkinson and John T. Guyton, all of Shreveport, for appellees.

TALIAFERRO, Judge.

The widow and heirs of Gus Gipson, deceased, bring this action to have canceled and annulled, because of alleged error of fact and law on their part, sales made by them in the year 1919 to N. S. and W. R. Spearman of undivided interests in and to the "S.W.¼ of Section 15, Township 23, Range 16 West, and 51½ acres in Section 22, same Township and Range described in their petition, and situated in Caddo Parish, Louisiana."

One sale conveys an undivided two-fifths interest in said tracts, and the other conveys a one-tenth interest therein.

It was the intention of the grantors, reflected from the allegations of their petition, to sell and convey such interest in the lands described as was by them acquired by in-

heritance from Gus Gipson, deceased, and "which he inherited from his father, Richard Gipson." It is not disclosed how the widow of Gus Gipson could have inherited from Richard Gipson, the father of Gus.

The gravamen of plaintiffs' complaint is clearly disclosed from the below-quoted articles of their petition:

"7. That said sales and deeds were and are null and void because the said vendors therein erroneously believed then that they and the said minors actually owned the interests and titles therein sought to be conveyed, but that they did not in fact own such interests and titles in the said property, and were therefore without any legal right or authority to sell the same.

"8. That at the time the said vendors believed that they and the said minors had inherited said interests in said property as follows: that Gus Gipson, Sr., had inherited an undivided one-tenth interest in said property from his deceased father, Richard Gipson, by being a legal heir of his said father, and an undivided one-tenth interest in said property from his deceased mother, Louisa Tyson Gipson, by being a legal heir of his said mother, and that the said vendors and the said minors as the widow and children of the said Gus Gipson, Sr., had inherited that interest in the said property from and through him, but that as a matter of fact, as your petitioners have lately learned and now allege to be true, the said Gus Gipson, Sr. was not a legal heir of his deceased father, Richard Gipson, and did not inherit any interest in said property from him, and was not a legal heir of his deceased mother, Louisa Tyson Gipson, but on the contrary was one of her natural children, and only inherited from her a right to have himself recognized as one of her irregular heirs and as such to be put in possession of a portion of her estate by judgment of a court of competent jurisdiction, and that neither the said Gus Gipson, Sr., nor your petitioners, as his legal heirs and representatives have yet been recognized as such heir or heirs and sent into possession of any portion of her estate by final judgment of any court of competent jurisdiction."

Tender to the vendees of the price of each of said sales is alleged. The prayer in substance is that said deeds and the sales they evidence be decreed null and void, and that petitioners be released and relieved "from the warranty and any and all other obliga-

tions arising from or under or as a result of or in connection with the said deeds," etc., upon paying over to defendants or depositing to their credit in bank or court registry the price of said sales.

Defendants, being residents of the state of Texas, were cited through a curator ad hoc who appeared in the case through counsel.

A prayer for oyer of the deeds sought to be annulled was first filed, but before being passed on, defendants in one pleading filed and urged exceptions as follows:

1. Lack of sufficient interest or right in plaintiffs to bring and prosecute the suit;

2. Prematurity of the action;

3. No cause or right of action;

4. Prescription of five and ten years, as is provided in articles 3542 and 3544 of the Revised Civil Code; and

5. Nonjoinder of parties.

The prayer for oyer, the plea of prematurity, and the exceptions of no cause and no right of action were all sustained and the suit dismissed. From judgment thus disposing of the case, plaintiffs have appealed. Here, by answer, defendants urge us to amend this judgment by sustaining the pleas of lack of interest, prescription, and the exception of nonjoinder.

The prayer for oyer is obviously well founded and was properly sustained, but compliance with the court's order thereon would virtually have been futile because in the same breath the suit was wholly dismissed on other pleas. The plea of prematurity and the exceptions of no cause and no right of action are so closely related in their legal aspects that they may be consolidated for the purpose of discussion. These are buttressed upon the legal proposition that a vendor in an act of sale of real estate is without right, cause or interest, and is legally estopped, to seek its annulment for the alleged reason that he at the time of sale was not vested with a valid title to or interest in the land sought to be conveyed; and particularly so if the vendee is not being disturbed in his possession and chooses to stand upon the title deed given him by the grantor. As is clearly reflected from the above-quoted allegations of their petition, plaintiffs' position is that as they only had the right as the natural or irregular heirs of Gus Gipson to be recognized as owners and placed in possession of the property constituting his estate and had

not availed themselves of this legal right, they were not the owners of the interests they sought to convey to the Spearmans, and because of error on their part in this respect, they should be relieved from all obligations under their solemn contracts by judicial annulment thereof. We do not hesitate to conclude that this position is basically unsound. Article 2452 of the Civil Code is relied on by plaintiffs. It reads as follows:

"The sale of a thing belonging to another person is null; it may give rise to damages, when the buyer knew not that the thing belonged to another person."

And article 949, which deals with the rights of natural or irregular heirs, follows:

"Natural children and the surviving husband or wife before being put into possession of the estate left to them, are not considered as having succeeded to the deceased from the instant of his death; but they do not the less transmit their rights to their heirs, if they die before having made their demand to be put into possession. The reason is, that this sort of heirs having only a right of action to cause themselves to be put into possession of successions thus falling to them, this right and this action form a part of their succession, which they transmit to their heirs."

■ If plaintiffs' contention be sound, the vendor's warranty in a sale of real estate not owned in whole or part by him amounts to little or nothing. To sustain this contention, as to sales more than ten years old, would virtually render impotent the curative power of prescription based upon good faith and possession, because such prescription is only necessary to the consummation of title when such is acquired from one not the true owner. We are quite certain that it was not intended that article 2452 of the Civil Code have the drastic effect contended for. Nullity of contracts may be absolute or relative. Under said article the sale of property of another is absolutely null as regards him, the true owner, but as regards the vendee the nullity of the instrument is relative. It lies in the power of the vendee to assert the nullity or accept the title as he finds it. We do not think that it was ever intended that the seller could avail himself of this codal provision to escape the obligations imposed by law upon him as warrantor and thereby deprive his grantee of the property sought to be conveyed to him. The article was not intended to measure the legal right of the seller who acts in ignorance of the true status of the title he endeavors to pass on to his vendee; and, to say the least, so long as the vendee is satisfied with what he has received, the seller is without interest or right to assail deeds which he has solemnly subscribed to.

There are a few adjudications of our own courts which undertake to interpret article 2452 of the Civil Code. The most scholarly and illuminating discussion of the article is to be found in Jefferson Sawmill Company v. Iowa & La. Land Company, 122 La. 983, 48 So. 428, 430. Justice Land, as the court's organ, has this to say:

"The Revised Civil Code reads:

" 'The sale of a thing belonging to another person is null; it may give rise to damages, when the buyer knew not that the thing belonged to another person.' Article 2452.

"The terms of this law do not limit the liability for damages to the vendor in bad faith.

"This article corresponds with article 1599 of the Code Napoléon, which has given rise to much discussion among the French jurists. Baudry-Lacantinerie argues that the sale of a thing belonging to another is not absolutely null, because such a contract produces certain legal effects, such as giving rise to damages in favor of the purchaser, to the obligation of warranty on the part of the vendor, and furnishing the purchaser with a just title for the purposes of prescription or of acquiring the fruits of the thing. In support of this proposition, that author cites Cass. 4 Mars 1891, D. 91, 1, 313; Troplong, 1, note 238; Laurent XXIV, N. 115, 116; Guilbouard, 1, N. 182; Huc. X, n. 64, 65, 66; and concludes as follows:

" 'La nullité est relative; elle ne peut être proposée que par l'acheteur, dans l'intérêt du quel elle a été édictée.' Id. De La Vente, pp. 94, 95. 'The nullity is relative. It can be invoked only by the purchaser, in whose interest it has been imposed.'

"This author reasons that the error of the vendor who believes himself owner is less excusable than the error of the purchaser who considers him as such, and that the vendor, having obliged himself to transfer the ownership of the property, should exert his best efforts to execute this obligation, and should be condemned in

damages if he should fail to do so. Id. pp. 95, 96.

"Laurent says:

" 'Dans notre opinion, la nullité est relative; elle est établie dans l'intérêt de l'acheteur et contre le vendeur qui vend une chose dont il lui est impossible de transferer la propriete à l'acheteur.' Id. Tome 24, No. 115.

"We translate as follows:

" 'In our opinion, the nullity is relative. It is established in the interest of the purchaser and against the vendor who sells a thing, the ownership of which it is impossible for him to transfer to the purchaser.'

"The same commentator says that Marcade was of the opinion that the sale of a thing of another is radically null and inexistent, and that this opinion had been followed by some writers, but that the contrary opinion was more generally adopted and was consecrated by jurisprudence. Id. No. 103.

"Mourlon discusses article 1599 of the Code Napoléon in his usual clear and forcible style. He says that the sale of the thing of another is null, because, the purchaser not having received the equivalent of the price, his obligation is without a cause or consideration; that in such a case the purchaser in good faith has an action in warranty even against the vendor in good faith to recover damages; and that such a sale produces several legal effects, to wit: (1) It obliges the vendor to deliver. (2) It obliges him to warrant the purchaser in good faith against eviction. (3) It serves the purchaser as a just title for acquiring the fruits and for the prescription of 10 years. Mourlon, Examen. Du. Code Napoléon. T. 3, Nos. 515, 521.

"Our jurisprudence on the subject is rather meager. In Palfrey v. Stinson, 11 La., 77, the court held that a vendor, having assumed to sell as sole proprietor, could not afterward say that he was only part owner. In Lafon v. De Armas, 12 Rob. [598], 626, the court incidentally discussed article 20, p. 348, Civ.Code 1808, declaring that 'the sale of a thing belonging to another is null,' and said:

" 'It is null in a certain sense—that is, so as not to operate a transfer of the property against the real owner—but it is not null in a certain other sense as respects the parties, since it may give rise to damages. If it was absolutely null, it would produce no effect—"quod nullum est, non producit effectum." '

"The court then proceeds to point out that a subsequent article of the same Code makes such a sale a. just title for the purposes of prescription, and concludes:

" 'Thus a certain effect is given to such a sale. It may be the basis of a just title, sufficient to prescribe under; and, if it was absolutely null, it would have no such effect.'

"In this case Judge Simon, as the organ of the court, advanced reasons which were subsequently assigned by the French commentators already cited, and which seem to have been approved by the French courts."

We find ourselves in complete accord with this interpretation of the article.

Plaintiffs cite and largely rely upon Williams v. Hunter, 13 La.Ann. 476, and Wilberding v. Maher, 35 La.Ann. 1182. These two cases were also relied upon in the Jefferson Sawmill Company Case, supra, and held not applicable in the following language:

"We do not think that either of these cases can be considered as precedents as to the construction of article 2452 of the Revised Civil Code, which was not even mentioned in the opinions of the court."

We are clear in the opinion that the lower court's action in sustaining the exceptions is correct. No good purpose would be served, so far as we can see, by our passing on the pleas and exceptions not decided by the trial court.

For the reasons herein assigned, the judgment appealed from is affirmed with costs.