198 So. 633

JACKSON et al. v. UNITED GAS PUBLIC
SERVICE CO. et al.

No. 35461.

Jan. 9, 1940.

On Rehearing April 29, 1940.

Second Rehearing Denied May 27, 1940.

Motion to Vacate Denied June 5, 1940.

2

W. B. Massey, of Shreveport, for plaintiffs-appellants.

Wilkinson, Lewis, Wilkinson & Naff, of Shreveport, for United Gas Public Service Co., Union Producing Co., and N. S. Spearman and W. R. Spearman, defendants-appellants.

ODOM, Justice.

Plaintiffs are the heirs and legal representatives of Gus Gibson, who was recognized as one of the irregular heirs of Louisa Tyson Gibson in the case of Succession of Tyson et al., 186 La. 516, 172 So. 772. In that case, Gus Gibson (or his heirs) was recognized to be the owner (or owners) of an undivided one-fourth interest in the Succession of Louisa Tyson Gibson. For a complete history of the Gibson and Tyson families, see Succession of Tyson, supra.

The present suit is a petitory action instituted by these heirs, and by their attorney, to be recognized as the owners and to be put in possession of an undivided one-fourth interest in certain lands situated in the Rodessa Oil Field in the Parish of Caddo, this state, which lands are alleged to have been owned originally by the Succession of Louisa Tyson Gibson. Plaintiffs allege that N. S. and W. R. Spearman claim to own, and are now in possession of, the said land, and further allege that the United Gas Public Service Co., the Union Producing Co., Inc., the Southland Royalty Co., the North Central Texas Oil Co., and Wright Brothers Co. claim to own certain mineral rights, which were acquired originally from N. S. and W. R. Spearman. Plaintiffs allege that they are entitled not only to an undivided one-fourth interest in

the said land, but also to the same interest in the oil, gas, minerals, and mineral products which have been, and are being, produced from the said property by the United Gas Public Service Co. and the Union Producing Co., Inc., which companies are now operating for oil and gas as lessees of the other oil and gas companies named above.

The notarial records of Caddo Parish, where this land is situated, disclose that on July 8, 1919, and on August 6 of the same year these plaintiffs sold with full warranty of title to N. S. and W. R. Spearman, by two separate deeds, an undivided one-fifth interest in the land which they now claim to own. In the deed dated August 6, 1919, Lucindia Gibson, as natural tutrix of the minors Rosie Lee (sometimes called Rosetta) and Gus Gibson, Jr., sold to the Spearmans by notarial act an "undivided one-tenth interest of the minors Rosetta and Gus Gibson" in and to said land; and by deed dated July 8, 1919, Lucindia Gibson, widow of Gus Gibson, Sr., and Otis Gibson and Lela Gibson Dimmer sold to the Spearmans "all of our title interest in and to the 2/5 undivided interest in the following described property". Then follows a description of the property involved in the present suit.

Gus Gibson, Sr., was the father of four children, to-wit: Rosie Lee, Gus, Jr., Otis, and Lela (now Lela Dimmer), who inherited his interest in the Succession of Tyson.

Plaintiffs in their petition allege that they anticipate that defendants will rely upon these deeds, and for that reason they attack them on various grounds, which will be discussed later in this opinion. They seek to have it decreed that the said deeds were null and void, mainly on the ground that, whereas they thought at the time those sales were made that they owned the property, yet as a matter of law they did not own it; that, at the time those sales were made, the property belonged to the Succession of Tyson (see 186 La. 516, 172 So. 772); that they did not inherit the property at the death of their ancestor, but inherited nothing more than the right to have themselves recognized as heirs, which was subsequently done in the case referred to. In sum, plaintiffs allege that, as a matter of law, they did not acquire any interest in the property until the year 1937, when it was formally decreed by this court that they were the heirs and legal representatives of Louisa Tyson Gibson; that, owning no interest in the property in 1919, when these deeds were executed, they could convey no interest to the Spearmans.

They specifically allege that, at the time those deeds were made, they believed that Gus Gibson, Sr., who had previously died, "was one of five children born to his parents Richard Gipson and Louisa Tyson Gipson (Sometimes called Gibson), during the existence of a valid slave marriage, and that upon their respective deaths, he, as one of their legal heirs, had inherited an undivided one-fifth (1/5) interest in and to the land hereinabove described, * * * but that as they have discovered within the past sixteen (16) months, the said Gus Gipson, Sr., was not a lawful child of his parents, and had therefore not inherited any interest in

the said land as such, and has not passed the same on by inheritance to them, but instead was a natural child of his deceased mother, and had inherited only a right to have himself recognized as an irregular heir and be sent into possession of a portion of her estate".

Sub-paragraph (b) of Paragraph 22 of plaintiffs' petition reads as follows:

"That under the law of Louisiana, the said plaintiffs were without any legal right to sell the said land or any portion thereof in 1919, and if they had been aware of this fact and of the fact that they did not really own the property at the time, they would not have consented to sell the same, or executed the said deeds."

The demand to have the deeds declared null on the grounds stated above is what all parties refer to as plaintiffs' main demand. In the alternative, plaintiffs aver that the deed dated August 6, 1919, executed by Lucindia Gibson as tutrix, is null and void, first, because Lucindia Gibson was never legally appointed or qualified as natural tutrix of the minors Rosie Lee and Gus Gibson (this attack has been abandoned); and second, that the family meeting which authorized the sale of the minors' interest in the property was composed of relatives and a friend of the family, which was illegal because there were other relatives who might have been called, and that, because this was a sale to effect a partition of the property, the whole of the property should have been appraised and authorized sold to effect the partition; that the minors' interest in the property was not appraised by the family meeting, nor sold to any co-owner or co-owners, as required by law.

Further in the alternative, plaintiffs allege that, if it should be held that they sold an undivided one-fifth interest in the property to the Spearmans in the year 1919, as per the deeds referred to, they still own an undivided one-twentieth interest in the property, this being the difference between the one-fifth interest alleged to have been sold and the one-fourth interest which they were subsequently decreed to own in Succession of Louisa Tyson Gibson, supra.

All defendants filed exceptions of no cause or right of action, pleas of prescription of one, five, and ten years, and pleas of estoppel. The trial court sustained the exceptions of no cause or right of action in so far as these exceptions related to the main demand, but overruled them as to the alternative demands. The plea of prescription and that of estoppel were referred to the merits.

All defendants filed answers, which, in substance, were reiterations of the pleas previously filed.

The trial court held that plaintiffs' collateral attack upon the validity of the family meeting, which authorized the sale of the minors' property in 1919, was without merit, and gave full force and effect to the deed made by the tutrix and to the deed made by the majors. The court held, however, that plaintiffs owned an undivided one-twentieth interest in the land, and ordered them placed in possession thereof, and ordered the United Gas Public Service Co. and the Union Producing Co., Inc., as lessees under the Spearmans, to render an ac-

counting and to pay the plaintiffs the amount due them as owners of the undivided one-twentieth interest. From this judgment the plaintiffs and the defendants appealed.

We think the judgment appealed from is correct on all points. Plaintiffs' so-called main demand, in sum, is that, when they sold their interest in this land to the Spearmans in 1919, they believed they were the legal heirs of their grandfather and grandmother, who owned the land originally, and, as such heirs, had inherited an undivided one-fifth interest therein; that they have since learned that they had not at that time inherited anything from their ancestors except the right to be recognized as heirs, which right they have since exercised; that they have been declared to be the irregular heirs of their grandmother in Succession of Tyson, 186 La. 516, 172 So. 772; that they did not as a matter of law own any interest in said land until the decree of this court became final; that therefore in 1919 they sold something which they did not own, and that such sale was null, under Article 2452 of the Revised Civil Code, which provides that: "The sale of a thing belonging to another person is null; it may give rise to damages, when the buyer knew not that the thing belonged to another person."

Plaintiffs' theory is that now, since they have been recognized as heirs and decreed to be the owners of an undivided one-fourth interest in said succession, they own an undivided one-fourth interest in the land which belonged to the succession, and have a cause and right of action to set the former

sales aside and to be relieved of the warranties expressed in those deeds.

The trial judge sustained the exceptions of no cause or right of action to plaintiffs' demands for the reasons stated in the case of Dimmer et al. v. Spearman et al., La. App., 178 So. 764. He said in his written opinion:

"We do not deem it necessary to discuss the plaintiffs' main demand. The main demand in this suit is identical with the demand set up by the plaintiffs in a suit in which they appeared as plaintiffs and the defendants here appeared as defendants, and in which this court sustained an exception of no cause or right of action. (See Dimmer v. Spearman, No. 70,862 on the Docket of this Court). The plaintiffs appealed from that ruling to the Court of Appeal of the Second Circuit of Louisiana, 178 So. 764, which court affirmed the judgment of this court and dismissed plaintiffs' suit.

"We attach hereto and make a part hereof a copy of the judgment rendered by the Court of Appeal in that case, from which it will readily be seen that the issues involved there in so far as they relate to the main demand are the same as those involved in the present suit. If the exception of no cause or right of action was good in that case it should be sustained in this suit in so far as plaintiffs' main demand is concerned."

The case of Dimmer v. Spearman was decided by the Court of Appeal, Second Circuit, in October, 1937, and plaintiffs applied to this court for writs of review, which were denied on January 10, 1938.

■ We thought then, and think now, that the reasons assigned by the Court of Appeal for sustaining the exception of no cause or right of action are good, and therefore further discussion of the question would subserve no useful purpose. We might, however, stress the fact, as found by the Court of Appeal, that the Spearmans, who purchased from these plaintiffs in the year 1919 and who are now in possession of the land, have never at any time raised any objection to the title which they received. `So far as the record discloses, they are now, and have always been, entirely satisfied with their title. The Court of Appeal discussed this point and assigned reasons for its holding that the exception of no cause or right of action was good.

■ In addition to the reasons assigned by the Court of Appeal, we may add that, under the well-established jurisprudence of this state, such title to the land as these plaintiffs may have acquired by reason of the holding in Succession of Tyson, supra, inures to the benefit of the Spearmans, who acquired from these same plaintiffs, in good faith and under full warranty, an undivided one-fifth interest in this land in the year 1919.

If it be conceded, as plaintiffs now claim, that they did not, as a matter of law, own any interest in the land when they sold it, but that they subsequently acquired title thereto by reason of their having been recognized as heirs later on, they cannot now disturb defendants because, as stated in many cases decided by this court, such after-acquired title "must inure to the benefit of their vendees". Succession of Dupuy,

33 La.Ann. 277. In the Dupuy case, the court said:

"Even if it could be urged that at the date of the compromise they had no rights as heirs, and, therefore, no title to the property which they pretended to sell, any claim which they could now set up would be easily defeated under a well-settled principle of our jurisprudence, providing that the title which they subsequently acquired at the discovery of the will, and as legatees thereunder, must inure to the benefit of their vendees. (Bonin v. Eyssaline) 12 Mart. [O.S.] 185; (McGuire v. Amelung) [12 Mart., O.S.] 649; (Woods v. Kimbal) 5 [Mart.] N.S. 248; (Fenn v. Rils) 9 La. [95], 100; (Stokes v. Shackleford) 12 La. 170."

In the case of St. Landry Oil & Gas Co., Inc. v. Neal et al., 166 La. 799, 118 So. 24, 25, this court said:

"Ordinarily, where one sells the property of another—and the rule is equally applicable to the granting or sale of mineral leases—and later acquires title to the property sold by him, the title vests immediately in his vendee." (Citing a long list of cases supporting the general rule.)

This doctrine is so well established that we deem it unnecessary to discuss it further.

■ As relates to plaintiffs' first alternative plea, we find that they made a collateral attack upon the sale made by the tutrix of two of the four children of Gus Gibson, Sr., on the ground that the family meeting which authorized the sale was not properly composed, in that one member of

it was a friend and not a relative of the minors. Counsel for plaintiffs conceded that, in default of relatives, friends of minors may be called to compose family meetings. Civil Code, Article 281. But he says that, as a matter of fact, there was a sufficient number of relatives of the minors then residing in the parish to compose the meeting without calling in friends. In support of his argument that this family meeting could not function because it was improperly composed, he cites such cases as Succession of Marinovich, 105 La. 106, 29 So. 500, and Succession of Fried, 106 La. 276, 30 So. 839. These cases are not in point. In Succession of Marinovich, a mother was duly qualified as tutrix of her minor children but remarried without being retained in the tutorship. Subsequently she made application to be appointed dative tutrix, and a family meeting was called to advise and make recommendations. The family meeting was composed of relatives and friends, and the under-tutor of the minors opposed the recommendations on the ground that the meeting was not properly composed. The objection was sustained. But this was a direct attack upon the proceedings by the under-tutor, made before the recommendations were acted upon. In Succession of Fried, the uncle of the minors opposed the family meeting on the ground that it was improperly composed, and his opposition was sustained by the court.

In the case at bar, the tutrix acted upon the recommendations of the family meeting and sold the minors' property to the Spearmans about 18 years before the present suit was brought. The question here involved is whether a purchaser is required to look beyond the order of the court, which appointed the members of the family meeting, to see whether, as a matter of law, the meeting was properly composed. In the instant case, the judge appointed as members of the family meeting the persons named in the petition of the tutrix to have the meeting convoked. One of the persons named in her petition was referred to as a "friend" of the minors. Under such circumstances, it was held in a number of cases that the purchaser is protected by the order convening the family meeting and homologating the proceedings thereof. See Gandy v. Caldwell, 169 La. 870, 126 So. 221; Lemoine et al. v. Ducote et al., 45 La.Ann. 857, 12 So. 939, and Weil v. Schwartz, 51 La.Ann. 1547, 26 So. 475.

It is suggested by counsel for plaintiffs that, in as much as the Spearmans, who purchased the property were personally acquainted with the Gibson-Tyson family, they should have known that there was a sufficient number of relatives of the minors to compose the family meeting. But there is nothing to show that, as a matter of fact, they did have such knowledge. Certainly it cannot be assumed that they knew more about the family history than the mother of the minors did. We think there is no merit in this attack.

■ Plaintiffs attack the sale made by the tutrix on the further ground that the whole of the property was not appraised by the family meeting and was not sold for the purpose of effecting the partition, as required by law.

There is no merit in this attack, because Act 50 of 1912, which amended and reenacted Section 2667 of the Revised Statutes of Louisiana, of 1870, specifically authorizes the sale of a minor's interest in property to any co-owner or co-owners at private sale for its appraised value. The law as it stood prior to the amendment required that the entire property be sold. But since the amendment the interest of the minors may be sold to the co-owner. See Berry v. Wagner, 151 La. 456, 91 So. 837; McNamara et al. v. Marx, 136 La. 159, 66 So. 764; Bowen v. Marston, 134 La. 298, 64 So. 118.

The sales here attacked were made subsequent to the date on which the original statute was amended. The Spearmans owned all of the interest in the property except the interest owned by the heirs of Gus Gibson, Sr., and the minors' interest therein was sold to them by the trustees for its appraised value, which was $160.

Plaintiffs' second alternative plea is that they be decreed to be the owners of at least a one-twentieth interest in the land. We think this plea is well founded. We are perfectly satisfied that these plaintiffs never intended to sell to the Spearmans in 1919 more than an undivided one-fifth interest in the land. Taking judicial cognizance of our own decisions in cases where members of the Gibson-Tyson family have been involved, we know that it was always understood that Richard Gibson and Louisa Tyson, his wife, left at their deaths five legitimate children, these being the children thought to have been born of the marriage between Richard and Louisa.

It is true that these five children were not the legitimate heirs of their parents because the parents were married subsequent to the birth of the children, and they were not legitimated according to law. Gus Gibson, Sr., from whom these plaintiffs inherited, was one of the five children thought to be legitimate. It was therefore considered that he had inherited a one-fifth interest in the property; so that these plaintiffs, according to general repute, had inherited an undivided one-fifth interest. Gus Gibson, Sr., had four children, who inherited his interest in the property. At the time these sales were made to the Spearmans in 1919, two of these four children, Rosie Lee and Gus, Jr., were minors. The proceedings of the family meeting called to deliberate as to the best interest of these minors concerning the sale recite that the minors owned an undivided one-tenth interest in the property. In the sale made by the tutrix the property sold is described as "The undivided one tenth interest of the minors Rosetta and Gus Gibson".

In the sale made by the two major children, they were joined by their mother, Lucindia Gibson. But Lucindia Gibson, the widow of Gus Gibson, Sr., inherited no interest in the property from her husband, the entire interest having been inherited by his four children. Nevertheless, she joined the two majors in the sale to the Spearmans, the deed reciting that the sale included "all of our title interest in and to the ⅖ undivided interest in the following described property to-wit". Following the description of the property by subdivisions, the deed recites: "It being the intention

of said Vendors to sell all of their interest in the land belonging to their father—Gus Gibson, deceased".

Otis Gibson and Lela Gibson Dimmer, being two of the four children of Gus Gibson, deceased, owned the same interest in the land as did the two minor children. Hence these two majors could not have owned more than an undivided one-tenth interest in the property. We therefore conclude that the description purporting to convey a "⅖" undivided interest is a typographical error, and we attach no importance to it. What these major heirs intended to sell was an undivided one-tenth interest, this being one-half of the one-fifth interest supposedly inherited by Gus Gibson, Sr. Therefore, the one-tenth interest sold by the two minors through their mother as tutrix, plus the only interest which the majors could have owned (which was one-tenth), made up the entire one-fifth interest which they thought had been inherited by their father.

But, according to our finding in the case of Succession of Tyson, 186 La. 516, 172 So. 772, Gus Gibson, Sr., inherited an undivided one-fourth interest in this property. The reason he inherited an undivided one-fourth interest is that the exercise of the right of one of the five children to be decreed an heir of Louisa Tyson was barred by the prescription of 30 years, so that the entire succession fell to four of the children, one of them being Gus Gibson, Sr. He left four heirs, so that his one-fourth of the succession was inherited by his four children, each inheriting an undivided one-sixteenth.

It is therefore clear, we think, that, in as much as the heirs of Gus Gibson sold only an undivided one-fifth interest in the property, they still own the difference between the one-fifth sold and the one-fourth actually inherited, or an undivided one-twentieth interest in the land.

As we have already stated, the trial judge referred the pleas of prescription and estoppel to the merits, and finally overruled them for the reasons assigned in the case of Tyson et al. v. Spearman et al., 190 La. 871, 183 So. 201. This ruling, like the others made, was correct.

For the reasons assigned, the judgment appealed from is affirmed, the defendant to pay all costs.

ROGERS, J., not having heard the argument, takes no part.

On Rehearing.

HIGGINS, Justice.

In our original opinion we held that the plaintiffs were entitled to an undivided one-twentieth interest in the land in question, which represented the difference between the one-fifth interest in the property sold by them to the defendants and the one-fourth interest actually inherited by them as irregular heirs. The increase was due to the fact that certain other irregular heirs, having failed to assert their rights to claim their inheritance, were barred by prescription of thirty years. Succession of Tyson, 186 La. 516, 172 So. 772.

Plaintiffs applied for a rehearing, alleging that they were entitled to an undivided

one-fourth interest in the land on the grounds that as they were irregular heirs, they had only the right of action to claim that they inherited a part of the property in question; that, as they were not legal heirs, they did not obtain the seizin of the property at the time of the death of their father and did not acquire their interest therein until 1937, when they were recognized as irregular heirs in the Succession of Tyson, supra; that, therefore, the act of sale by Otis Gibson and Lela Gibson Dimmer, the two major children of Gus Gibson (Gipson), Sr., in July 1919, to the defendants, and the act of sale by Rosa Lee and Gus Gibson, Jr., the two minor children of Gus Gibson, Sr., through their tutrix, in August 1919, to the defendants, for the purpose of effecting a partition of the property in question, are null and void, because the vendors therein did not then have seizin of or title to the property sold.

The defendants also applied for a rehearing, claiming that this Court erroneously overruled their pleas of estoppel and prescription and that the plaintiffs were not entitled to any part of the land under either one of the pleas, having previously sold their entire interest therein to the defendants.

We shall first discuss the plea that the plaintiffs are now estopped to deny the facts, declarations, representations, and warranties which they made to the defendants and upon which the defendants relied in acquiring title to the whole of the property in question.

The record shows that Richard and Louisa Gibson (Gipson) had five children

who were held out by the couple as their legal heirs and were so regarded by the public. Both Richard and Louisa Gibson died intestate, the father in 1897 and the mother in 1901. Their successions were not opened until 1936. The Gibson children publicly declared that they were the legal heirs of their deceased parents and represented themselves as such to the defendants, who, during the years from 1901 to 1919, by a series of warranty sales acquired their undivided interest and the undivided interest of their descendants in the tract of land in dispute.

Gus Gibson, Sr., one of the five heirs of Richard and Louisa Gibson, died, leaving four children, two of whom were minors. The status of the children, as legal heirs of their father, was set forth in the petitions of Lucindia Gibson, widow of Gus Gibson, Sr., to be appointed as the natural tutrix of the minor children and for the convocation of a family meeting for the purpose of selling the undivided one-tenth interest of the minors in the tract of land, in order to effect a partition, the property being indivisible in kind. It was alleged that the defendants were the only other co-owners of the land. These representations and assertions of fact were judicially recognized by the court in the order approving and homologating the family meeting and authorizing the tutrix to represent the minors in selling their undivided interest in the property for the sum of $160 cash. The tutrix in every way complied with the recommendations of the family meeting and the order of the court authorizing the sale and the defendants

became the purchasers of the minors' undivided interest in the property.

Otis Gibson and Lela Gibson Dimmer, the two major heirs, had previously sold all of their undivided interest in the property to the defendants. Later Otis Gibson died and the plaintiffs accepted his succession. He had likewise made representations to the defendants of the heirship of his father and stated in the act of sale that it was his intention to sell all of his interest in the land.

Most of the above facts were reiterated in the petition of plaintiffs in the matter of Lela Gibson Dimmer v. N. S. Spearman et al., No. 78,062 of the docket of the First Judicial District Court, Caddo Parish, the litigation resulting in an adverse judgment to the plaintiffs, which was affirmed by the Court of Appeal of the Second Circuit. 178 So. 764, 765. A great many of the pertinent facts are also alleged in the plaintiffs' petition in the instant case.

Under these circumstances, the plaintiffs are not in a position to question the good faith of the defendants in accepting as true their representations of the legal heirship of Gus Gibson, Sr. The presumption of legitimacy is referred to in the Succession of Curtis, 161 La. 1045, 1051, 109 So. 832, 834, as follows:

■ " 'The presumption in favor of marriage and the legitimacy of children is one of the strongest known to the law, and in favor of a child asserting its legitimacy this presumption applies with peculiar force.' "

■ The general rule of law relative to estoppel by contract or deed is found in 21 C.J. 1237, 1238:

"If in a particular transaction or course of dealing the authority, capacity, character, or status of one of the parties is recognized or asserted as one of the basic facts on which the transaction proceeds, both parties are as a rule estopped to deny that the one occupied that position or sustained that character. * * *

■ "If in making a contract or in a course of dealing the title of one party or the other to the property involved in the transaction is recognized, and the dealing proceeds upon that basis, both parties are ordinarily estopped to deny that title or to assert anything in derogation of it."

The Court of Appeal of the Second Circuit, in the case of Robbins v. Martin, 18 La.App. 223, 229, 138 So. 132, 135, held:

"In Brown v. Parish [1 La.App. 246], the court stated that the character of the estoppel considered was equitable estoppel or estoppel 'in pais,' and the decision is predicated upon, and quotes with approval, the text from 16 Cyc. p. 738; whereas, we find from a further inspection of that same work (now Corpus Juris, vol. 21), on page 1110, under the heading 'Estoppel by Simple Contract,' the following:

" 'There are two sorts of what is termed "Estoppel by Contract," namely, (1) estoppel to deny the truth of facts agreed upon and settled by force of entering into the contract, and (2) estoppel arising from acts done under or in performance of the contract. The first form of estoppel, if

the contract is in writing, is analogous to certain phases of estoppel by deed, and is not in strict propriety a species of estoppel in pais, since it is wholly based on a written instrument.'

"And further in this connection, on page 1111 of the same work:

"'If in making a contract the parties agree upon or assume the existence of a particular fact as the basis of their negotiations, they are estopped to deny the fact so long as the contract stands in the absence of fraud, accident or mistake.'

"In support of the text the following is cited:

"'Estoppel by contract' is a term which is intended to embrace all cases in which there is an actual or virtual undertaking to treat a fact as settled, as for example, a contract based upon one's having asserted title to property will estop the parties, in the performance of the contract, from claiming a different title. Bigelow, Estoppel (5th Ed.) page 450, quoting Bricker v. Stroud, 56 Mo.App. 183, 188."

In the case of Watson v. Succession of Barber, 105 La. 456, 29 So. 949, 951, the parties involved partitioned land on the assumption that they owned it in certain proportions. Thereafter, they attempted to deny ownership of the interest which they had recognized and acknowledged in the partition. In holding that they were estopped to do so, the Court said:

"* * * Upon the trial the defendant offered to prove that Americus Watson was born while his supposed parents were living, the father with another woman, and

the mother with another man; and although the learned judge ad hoc ruled against the admission of such testimony, upon the objection of the plaintiff's counsel that defendant is estopped by the admissions contained in the contract which has just been recited, considerable testimony having no other purpose in view than to show that Americus Watson was incapable of inheriting from Dorcas Barber, seems to have found its way into the record. * * *

"There was no error in the ruling of the trial judge upon the admissibility of the evidence offered on behalf of defendant. By his explicit admission, in the solemn form of an authentic act, that Americus Watson was the 'surviving son and sole heir of Dorcas Barber,' Thomas Barber had estopped himself from denying the fact so stated,—at least, for any purpose connected with that for which said act was executed, —and those claiming under him are likewise estopped. By that act, as we interpret it, Americus Watson, in the capacity of sole heir of the deceased half owner, granted and conveyed to Thomas Barber all his rights, title, and interest in and to the real estate of which Barber was then possessed, except such as was conveyed by Barber to him; and Barber voluntarily consented thenceforth to hold said property, so far as an undivided half interest was concerned, by the title so acquired, and he so held it at the time of his death, and it is that title that the defendant has inherited. * * *

"And he could not have been heard to deny his written, authentic admission to that effect; nor can the defendant, who

holds under him. And, being bound to that admission, the defendant would also be bound to the admission that Watson was capable of conveying the interest which represented that equivalent, since the two propositions are interdependent upon each other. 'Where the party solemnly admits a fact by a deed under his hand and seal, he is estopped not only from disputing the deed itself, but every fact which it recites.' Herm.Estop. § 615. * * *"

▪ Plaintiffs herein can not now say that they are only irregular heirs of Richard and Louisa Gibson and that they own a one-fourth interest in the property, which they sold to the defendants in 1919 on the representation that they were legal heirs and with the judicial admission that the defendants were then co-owners of a nine-tenths interest in the property by purchase from all of the legal heirs of Richard and Louisa Gibson and Gus Gibson, Sr. The plaintiffs' petition in the instant case shows that at that time the defendants claimed to be the owners of every interest in the property except the interest claimed by the minor heirs of Gus Gibson, Sr. The plaintiffs recognized the defendants to be the owners of all other interests in the property acquired through the several sales from the legal heirs of Louisa and Richard Gibson and undertook to convey all of the remaining interest in the property to the defendants by their deeds, and declared that they were conveying the interest which they inherited from Richard and Louisa Gibson through their deceased father, Gus Gibson, Sr. They did not transfer their right to accept the Successions of Rich-

ard and Louisa Gibson as irregular heirs but transferred the property by warranty deeds, which, in effect, amounted to a warranty that they were legal heirs. Karcher v. Karcher, 138 La. 288, 291, 70 So. 228; Douglas v. Nicholson, 140 La. 1098, 1106, 74 So. 566; Martin v. Louisiana Central Lumber Co., 150 La. 157, 172, 90 So. 553, and Hoover v. Pennington, 19 La.App. 779, 782, 141 So. 517.

▪ It is clear that the plaintiffs, in accepting the succession of Otis Gibson, their deceased major brother and the son of Gus Gibson, Sr., are bound by his warranties and representations and are estopped to set up any alleged future acquired title as against the interest which Otis Gibson warranted in his sale to the defendants, as the plaintiffs inherited no greater rights from Otis than he had. United States F. & G. Co. v. Putfark, 180 La. 893, 158 So. 9; Longenbaugh v. Louisiana Irr. & Mill Co., 129 La. 436, 56 So. 359; Chatman v. Bundy et al., 130 La. 158, 57 So. 786; Curl v. Ruston State Bank, 104 La. 548, 29 So. 234; Stewart v. Mix, 30 La.Ann. 1036; and W. K. Henderson Iron Works & Supply Co., Ltd., v. Highhouse et al., 141 La. 803, 75 So. 729.

In the case of Mims v. Sample, 191 La. 677, 186 So. 66, we held that where an instrument set up the respective interests of the co-owners in land, the signers thereof were estopped from claiming a greater interest therein where the purchaser of interests in the property relied upon the document and parted with a valuable consideration.

Lucindia Gibson, as widow of Gus Gibson, Sr., and as the natural tutrix of the two minor children, Chess Gibson, under tutor and paternal uncle of the minors, and Otis Gibson, who acted as a member of the family meeting which recommended a sale for the purpose of effecting a partition of the property, made representations as to the legal heirship of the plaintiffs and that the minors owned a one-tenth interest and the defendants a nine-tenths interest in the property. The order of court recognized the facts set forth in the tutrix' petition and the proces verbal of the family meeting and authorized the sale in behalf of the minors. Relying upon these representations and judicial admissions of facts, publicly declared, defendants paid the plaintiffs the purchase price, in cash, for the property. The minors having received the benefit of the sale are estopped to deny the judicial statements and admissions of their duly authorized legal representatives, who acted in good faith.

In 31 C. J., page 1166, par. 355, it is stated:

"It is a general rule, that subject to certain exceptions hereinafter considered, that an infant properly represented is bound by the adjudication to the same extent that he would have been had all of the parties been adults, especially in cases where the infant appears as plaintiff or complainant."

See also Boudreaux v. Lower Terrebonne Ref. Co., etc., 127 La. 98, 53 So. 456; Dupre v. Soye, 31 La.Ann. 450; Le Blanc v. His Creditors, 16 La. 120; and Ross v. Enaut, 46 La.Ann. 1250, 15 So. 803.

In Krone v. Krone, 138 La. 666, 70 So. 605, 608, the court sustained the pleas of res judicata and of judicial estoppel against certain minors who were represented by their tutor, who, in their behalf, made allegations which they afterwards sought to repudiate. In holding that the minors were estopped, the Court said:

"The probate decrees referred to conclude the plaintiffs from disputing the title of the father to the real estate in question, and the conjoint ownership of their half-sister, Eva Krone."

In the Succession of Begue, 112 La. 1046, 36 So. 849, 850, we said:

"It is well settled that minors, properly represented, are as fully bound by judicial proceedings as majors who are duly cited. Heroman v. Louisiana Institute [of Deaf and Dumb], 34 La.Ann. 805."

See also Heirs of Barrow v. Barrow, 38 La.Ann. 645; and Orr v. Thomas, 3 La. Ann. 582.

In Dimmer v. Spearman, La.App., 178 So. 764 (in which case this Court refused a writ), the same parties to this litigation were involved, and the Court of Appeal, in affirming the judgment of the lower court, held that the exceptions of no right and no cause of action were well-founded because the plaintiffs were without right, cause, or interest, and were legally estopped to seek the annulment of the sale in question on the ground that they did not own the property at the time they sold it to the defendants. See also State ex rel. Stempel v. City of New Orleans, 105 La. 768, 30 So. 97.

In the recent case of Wallace v. Cassiere, 192 La. 581, 188 So. 707, the question involved was whether minors, after having received the full benefit of a mortgage through their tutrix, who was duly authorized by a family meeting and an order of court to execute the same, would be permitted to repudiate their obligations. A plea of estoppel was filed by the defendant mortgage creditor and overruled by the district court. On appeal, we held that the principles of estoppel are applicable to minors who have received the benefits of the recommendations of the family meeting and the authorized acts of the tutrix, particularly where it was impossible to restore the status quo between the parties and applied the rule announced in Article 1965, R.C.C., that no one has a right to enrich himself at the expense of another. In the instant case, it would be impossible to restore the status quo between the parties as the defendants over a great many years, after the minors had reached their majority and without any protest from them, have developed the property through gas and oil well operations to where it is very valuable and the plaintiffs have not contributed anything in that respect.

In our original opinion affirming the judgment of the district court, we overruled the plea of estoppel citing Tyson et al. v. Spearman et al., 190 La. 871, 183 So. 201. In that case, the plea of estoppel was based on the silence and inaction of the Tyson heirs in asserting their rights. We held that they were not estopped to assert their interest as the defendants had not in any way acted upon their inaction and, consequently, mere silence would not work an estoppel. The plea of estoppel here is predicated on the solemn acts and representations of the plaintiffs made in judicial proceedings and authentic acts, upon which the defendants relied in purchasing the property and parting with a valuable consideration therefor. There is, therefore, no similarity between the two cases in that respect and the legal distinction between them is well recognized. Parker v. Ohio Oil Co., 191 La. 896, 909, 186 So. 604; 10 R.C.L., § 21, 692; 27 R.C.L. 360; 19 Am.J. 742 and 21 C.J. 1131.

While it is necessary that the rights of minors be protected in every way possible, it is likewise essential that titles to real estate should be stable and certain and, therefore, where the legal representatives of minors, acting in their behalf, follow the requirements of the law in representing them to the best of their ability and understanding in a way that is considered most advantageous and beneficial to the minors' interest, the minors are thereby bound and are estopped to deny the judicial declarations of fact and representations made by their tutor in their behalf, when third persons have relied thereon and dealt with them in good faith and for a valuable consideration. In the case at bar there is no plea of imposition, fraud, or mistake induced by the defendants.

The conclusion we have reached on the question of estoppel makes it unnecessary to consider the plea of prescription acquirendi causa.

In all other respects our original opinion is correct.

For the reasons assigned, our decree affirming the judgment of the district court is annulled and set aside and

It is now ordered, adjudged and decreed that the plea of estoppel is sustained and the plaintiffs' suit is dismissed at their costs.

O'NIELL, C. J., does not take part.

PONDER, J., absent.

On Motion to Vacate and Set Aside the Judgments and to Restore This Case to the Calendar.

PER CURIAM.

 This motion by the plaintiffs, appellants, to vacate and set aside the judgments rendered in this case and to restore the case to the calendar of this court is refused on the ground that the judgment is final and the motion is therefore out of order. There is nothing in section 4, 5 or 6 of Article VII of the Constitution or in any other section in the Constitution requiring that all of the seven members of the court shall be present and participate in the hearing and deciding of every case. All that the Constitution requires in that respect is in section 4 of Article VII, declaring that the court shall be composed of seven members, four of whom shall concur to render a judgment when the court is sitting en banc, meaning when the court is not sitting in sections.

O'NIELL, C. J., and LAND, ROGERS, ODOM, HIGGINS, FOURNET, and PONDER, JJ., concur.